[Civ. No. 777.   Fifth Dist.   Oct. 3, 1967.]

VIOLET B. D'ORAZI, as Administratrix, etc., et al., Plaintiffs and Appellants, v. BANK OF CANTON, Defendant and Respondent.

Moody & Nelson, Gilbert Moody and Oliver K. K. Nelson for Plaintiffs and Appellants.

McVay, Reid & Azevedo, Norman S. Reid, Gavin McNab and McNab, Schmulowitz, Sommer & Wyman for Defendant and Respondent.

CONLEY, P. J.—In this case the original plaintiffs, Joseph F. D'Orazi and Violet B. D'Orazi, his wife, sued Victor W. D'Orazi, individually and doing business as D'Orazi Investment Company, and others, for moneys alleged to have been due to the plaintiffs; Joseph F. D'Orazi having died, the administratrix of his estate was substituted as a plaintiff. The complaint contained three counts, the first two dealing with alleged debts which are not involved in this appeal, and the third cause of action concerned with a debt alleged to be due to Joseph F. D'Orazi and his wife from his brother, Victor W. D'Orazi, for the original sum of $10,000 due to him for services rendered as a real estate salesman and evidenced by a promissory note of Luther Warda and Mahe L. Warda, his wife, for a total of $20,000, being the balance due for real estate brokerage services rendered to the Wardas through the purchase of a $500,000 ranch in Merced County. This note, under the circumstances hereinafter set forth, was found by the trial court to be the sole property of Bank of Canton, to which the whole note was fraudulently pledged by Victor D'Orazi in connection with a loan which he received from the bank. The appeal is based upon an engrossed statement of the trial proceedings, the clerk's transcript and exhibits introduced upon the trial of the case.

The engrossed statement of the facts shows that in the year 1963 and for several years before that the defendant Victor W. D'Orazi was a duly licensed real estate broker doing business as an individual under the name of D'Orazi Investment

Company, with his principal office in San Francisco. In January 1963, his brother, the plaintiff Joseph F. D'Orazi, became employed by Victor D'Orazi as a real estate salesman in charge of a branch office of the brokerage in Turlock; it was agreed between them that Joseph should receive as compensation 60 percent of any real estate commission paid as a result of his work as a salesman, with the expenses of the Turlock office to be paid by Victor D'Orazi.

In July of 1963, the D'Orazi Investment Company, acting through Joseph F. D'Orazi, procured the sale of a ranch in Merced County known as the Charles Thomas Ranch to Luther Warda for the price of $500,000. Joseph handled all of the details of the transaction, and under his contract with D'Orazi Investment Company he was entitled to the sum of $15,000 from the commission of $25,000. This commission was to be paid by the Wardas in the following way: $5,000 in cash and $20,000 by promissory note. Joseph F. D'Orazi, however, agreed with his brother to take a smaller share of the commission: $3,000 in cash and a one-half interest in the promissory note. The $5,000 was accordingly split between the two brothers with $3,000 going to Joseph and $2,000 to Victor. The Escrow and Title Service of Turlock, as escrow holder, was directed to show by proper documents the agreement which had been reached by the two D'Orazis and the Wardas. In compliance with that arrangement, the escrow company sent to Victor W. D'Orazi in San Francisco an unsigned promissory note and Victor W. D'Orazi signed and sent back to the escrow company a writing contained on the back of the note reading: "The undersigned hereby assigns an undivided one-half interest in the within note, without recourse, to Joseph F. D'Orazi.

D'ORAZI INVESTMENT COMPANY
By Victor W. D'Orazi"

The note had been filled out by the escrow holder to read as follows: "20,000.00   Turlock, California   July 1st, 1963

"On or before January 1, 1964, after date, for value received I promise to pay to D'ORAZI INVESTMENT COMPANY, or order, at San Francisco, California the sum of TWENTY-THOUSAND and no/100 . . . dollars, with interest from July 25, 1963 until paid, at the rate of Six per cent per annum, payable at maturity.

"Should default be made in payment of principal or interest, the whole sum of principal and interest shall, at the option of the holder of this note, become immediately due.

904

Principal and interest payable in lawful money of the United States. If action be instituted on this note, the undersigned promise to pay such sum as the Court may adjudge as attorney's fees.''

The Wardas then signed the note while it was in escrow. A copy of the completed document was given to the Wardas by the escrow holder and a Verifax copy was also handed to Mr. Joseph D'Orazi; the note itself, with a check for his $2,000, was sent back to Mr. Victor D'Orazi in San Francisco. Unquestionably, Mr. Victor D'Orazi was entitled to receive and hold the note as the broker who, through his salesman, had rendered the services to the Wardas. (Bus. & Prof. Code, §§ 10137, 10138.)

The question is posed, however, whether in view of the way the matter was handled the plaintiff Joseph D'Orazi had any interest in the document. ██ It is first argued by the respondent bank that because Victor executed the assignment before the note was signed by the Wardas, Joseph received no interest in the note. Those who so contend are blind to the common-sense fact that when an escrow such as this is handled after the parties involved have completely agreed upon what is to be done, the actions of the several persons constitute what might be said in ordinary language to be a ''package deal'' supervised by the escrow holder which is an agent for all parties to the escrow. The escrow holder goes about securing the necessary written concurrence of the parties after they have actually agreed upon what is to be done; under such circumstances, when the note is finally executed in its several parts in conformity with the contract made orally among the parties, every part is viable.

██ It is also urged that an assignment of a note of this kind is not valid if only an interest in the note rather than the whole is assigned, reliance being misplaced on the provisions of section 3113 of the Civil Code relating to *negotiation* of a note which reads as follows: ''The indorsement must be an indorsement of the entire instrument. An indorsement which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the instrument to two or more indorsees severally, does not operate as a negotiation of the instrument. But where the instrument has been paid in part, it may be indorsed as to the residue.''

However, that section relates solely to *negotiation* of commercial paper (*Wright* v. *Shoenhair*, 100 Cal.App. 163 [280 P. 174]), and not to an *assignment* of an interest in a note. It

is unquestionably true that as to negotiation: "An endorsement is effective for negotiation only when it conveys the entire instrument or any unpaid residue. If it purports to be of less it operates only as a partial assignment." (Cal. Com. Code, § 3202, subd. (3).)

■ In 80 American Law Reports at page 414, the following general rule is stated with respect to the right to enforce in equity a partial assignment when all of the parties to the debt are joined in a single action such as we have here: "Notwithstanding many broad statements seemingly to the contrary met with in courts of law or elsewhere, the rule overwhelmingly supported by the cases wherein the point has been involved or squarely considered is that the assignment of part of a debt, although unassented to by the debtor, is enforceable against him in equity. The reason, and apparently the only reason, obtaining at law for refusing to enforce such an assignment, that if given effect the debtor would be deprived of the right to pay his debt in solido and might be subjected to many actions, embarrassments, and responsibilities not contemplated in his original contract, does not apply in equity, whose procedure contemplates that all persons at interest be made parties and have their rights determined by a single decree; consequently, in equity, the rule denying validity to such assignments ought not to, and generally does not, obtain."

California cases cited in support of that law note recognize, or clearly intimate, the existence of the rule, as follows: *Pierce* v. *Robinson*, 13 Cal. 116; *Pope* v. *Huth*, 14 Cal. 403; *Grain* v. *Aldrich*, 38 Cal. 514 [99 Am.Dec. 423]; *Goldman* v. *Murray*, 164 Cal. 419 [129 P. 462]. (See also *Kent* v. *Kent*, 6 Cal.App.2d 488 [44 P.2d 445]; 5 Cal.Jur.2d Rev., Assignments, § 44, pp. 431-433, § 68, p. 476; 8 Cal.Jur.2d, Bills and Notes, § 51, pp. 382-383; 6 Am.Jur.2d, Assignments, § 76, pp. 257-259, § 77, pp. 259-261; Rest., Contracts, § 156.)

It should be borne in mind also that in this case the Wardas as makers of the note were not only aware of the agreement between the two D'Orazi brothers but thoroughly approved the share of the total amount of $20,000 which Joseph D'Orazi was entitled to obtain at the time of ultimate payment. This is demonstrated by the fact that the Wardas paid to Joseph D'Orazi for credit on his share of the note, voluntarily and prior to the institution of the suit here in question, the sum of $2,000 principal and $258.40 interest.

Unknown to Joseph D'Orazi and his wife or to the Wardas, Victor D'Orazi negotiated a loan from the Bank of Canton to himself and his wife on August 14, 1963, and executed a promissory note for $20,000 in favor of the bank, payable four months after date; at that time, Victor D'Orazi delivered to the bank as a pledge to secure the payment of his own note, the Warda promissory note, one-half of which had been assigned to Joseph D'Orazi. The Warda note thus delivered was accompanied by a forged reassignment of Joseph's half of the proceeds of the Warda note purporting to have been executed by Joseph. During the trial all parties conceded that this was a forgery and the trial court so found; furthermore, Victor D'Orazi knew that it was a forgery. The bank official who testified said that the bank accepted the pledged Warda note on the sole ground of its belief that the forged reassignment by Joseph D'Orazi was in fact genuine and that Victor D'Orazi then had full title to it. *The Warda note was not endorsed by Victor D'Orazi or by any other person in connection with its delivery to the Bank of Canton.* The following questions and answers are contained in the engrossed statement: " 'Mr. Reid: Q. When there is an assignment of a note, or endorsement on a note, Mr. Ho, in your experience,—strike that for a minute. Did this particular assignment on this note which was in Mr. Victor D'Orazi's possession have any significance to you in determining who was the owner of the note at the time that you took it into your possession? A. Well, to my way of thinking whoever is—whoever holds the note is the actual owner of the outstanding—

" 'Q. Even though this particular— A. (Interrupting) Even though that particular assignment is on it.

"Mr. Moody: Q. Now when this note was delivered to you, the Warda note, you saw on it the assignment of Joseph D'Orazi, did you not? A. Yes.

" 'Q. When you made a loan to Victor D'Orazi on the security of that note, if there had not been that re-assignment — A. (Interrupting) Could you repeat that?

" 'Q. If there had not been that purported reassignment delivered to you at the same time, would you have made the loan? A. Without the separate re-assignment, you mean?

" 'Q. Yes. A. No, I would not.

" 'Q. And is that because of the endorsement on the back that you would not have? A. Well, partially, because I wanted to be sure everything is all right before we go ahead with the loan.' "

Mr. and Mrs. Victor D'Orazi defaulted in their obligation to the Bank of Canton. Then, for the first time the bank wrote a letter to the Wardas dated January 16, 1964, saying that it held a note executed by them and wished to collect it. Luther Warda thereupon contacted Joseph and told him that the bank was seeking payment as a purported pledgee of the note. This in turn was the first notice that Joseph F. D'Orazi had received that the bank claimed to hold the Warda note.

As the purported assignment by Joseph F. D'Orazi was in fact a forgery and was known to be such by Victor, the pretended reassignment was a complete nullity. (Civ. Code, § 3104; Cal. Com. Code, § 3404; 1 Witkin, Summary of Cal. Law (1960) Negotiable Instruments, § 8, p. 577; 8 Cal.Jur.2d, Bills and Notes, § 110, p. 439; *United States Rubber Co.* v. *Union Bank & Trust Co.,* 194 Cal.App.2d 703 [15 Cal.Rptr. 385]; *Berger* v. *Steiner,* 72 Cal.App.2d 208 [164 P.2d 559].)

It has already been pointed out that there was no endorsement of the Warda note by or on behalf of Victor D'Orazi either before or after it was handed to the Bank of Canton purportedly as a pledge. Section 3130 of the Civil Code reads: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." (See also 1 Witkin, Summary of Cal. Law (1960) Negotiable Instruments, § 20, subd. (b), pp. 588-589; 126 A.L.R. 1309; 87 A.L.R. 1178.)

The suggestion of respondent that the plaintiffs are estopped to question the rights of the bank is without support either in the law or the facts; Joseph did nothing to mislead the bank; the Bank of Canton was the victim solely of Victor.

It is clear that the transfer of the Warda note to the bank vested in the bank as pledgee only such title as the transferor had in it, meaning a one-half interest therein. Joseph F. D'Orazi, by virtue of the assignment to him which was never withdrawn or changed, had a one-half interest in the note and continued to hold it. Therefore, the judgment in favor of the Bank of Canton as against Joseph F. D'Orazi is erroneous.

The judgment to the extent appealed from must be reversed. There is no point in requiring a retrial of the case as

it is clear from the record what should be done in connection with the righting of the mistakes contained in the findings and judgment as they now exist.

The judgment to the extent that it is appealed from is reversed and the trial judge is directed to modify the findings and the judgment consistently with this opinion so that the plaintiffs will be granted judgment against the Wardas for one-half of the principal and interest due on the note, less any sums already paid by the Wardas to Joseph F. D'Orazi, with a consequent diminution of recovery by the Bank of Canton as to one-half of the original note; the appellants shall recover costs.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied October 30, 1967, and respondent's petition for a hearing by the Supreme Court was denied November 30, 1967.