[Civ. No. 32922. Second Dist., Div. One. Nov. 13, 1969.]

VINCENT F. MARSANGO, Plaintiff and Appellant, v.
AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA,
Defendant and Respondent.

## Counsel

William B. Boone and Oscar F. Catalano for Plaintiff and Appellant.

Boccardo, Blum, Lull, Niland, Teerlink & Bell, Edward J. Niland, Harris, Parke, Barnes & McEwen, Thomas R. Hudson, Walkup, Downing, Wallach & Sterns, Raoul D. Magana, Daniel C. Cathcart, William P. Camusi and E. Robert Wallach as Amici Curiae on behalf of Plaintiff and Appellant.

Gilbert, Thompson, Kelly, Crowley & Jennett, Roger E. Kelly and Jean Wunderlich for Defendant and Respondent.

## Opinion

**THOMPSON, J.**—Appellant, who had previously obtained a judgment in a personal injury action in excess of the policy limits of the insurance coverage of the defendant in that action, filed the present lawsuit against respondent as an assignee of the defendant (insured) in the personal injury action. The case was tried before a jury which found against appellant and this appeal followed.

### Facts

Viewed as it must be in the light most favorable to the respondent, the record discloses the following. Vincent F. Marsango, appellant, was injured in an automobile accident in which a car driven by Stanley K. Sheinbaum struck his automobile from the rear. The impact was relatively slight causing less than $85 damage to each of the cars. Sheinbaum carried a $25,000 policy of liability insurance with respondent. An adjustor for respondent called on Marsango. He found that Marsango had suffered an "acute strain of cervical and lumbosacral spines, and possible compression fracture, minimal, of 7th dorsal." Marsango demanded $5,000 in settlement. The settlement demand was not accepted and no counteroffer was made by respondent. Marsango then retained Mr. Tom Halde to represent him in filing an action to recover for his injuries.

The action was filed on behalf of Marsango claiming $100,000 in damages from Sheinbaum. Respondent undertook defense of the suit on behalf of Sheinbaum, its insured, and informed him of the possibility of a recovery in excess of the limits of the insurance policy. Respondent also informed its insured of his right to have his own counsel participate in defense of the action. Sheinbaum, in response to the information, consulted Mr. Lewis Baker, an attorney, who informed respondent that he represented the insured and desired to be kept informed of developments in the case.

Marsango experienced severe headaches and neck and back pain. Those symptoms continued until corrected by an operation fusing two cervical vertebrae. Marsango claimed that the injuries to his vertebrae were due to the accident. He also claimed to have suffered epileptic seizures caused by the trauma. Marsango incurred approximately $4,300 in medical expenses and claimed $9,000 loss in earnings from self-employment as the operator of a service station.

Respondent's investigation developed evidence that Marsango, prior to the accident, had exhibited symptoms of severe headaches, neck pain, and back pain, and had also shown prior symptoms consistent with epilepsy. Extensive pretrial discovery conducted by respondent disclosed that Marsango apparently was unable to sustain the loss of earnings asserted by him. The discovery also showed that Marsango denied the prior symptomatology which respondent was confident it could establish by the evidence obtained in its investigations. Sheinbaum and Baker, his counsel, were kept fully informed of respondent's actions and were afforded full access to its files.

The representatives of respondent viewed the case as one of "probable liability with mitigating circumstances." Their view was based upon the "rear end" nature of the collision with minimum impact, the information of Marsango's prior symptoms consistent with the injuries claimed by him to result from the accident, and the results of pretrial discovery which disclosed Marsango's apparent inability to establish loss of earnings and his denial of prior symptoms. Respondent established an initial reserve on the Marsango claim of $7,500. Approximately five months prior to trial and after the spinal fusion had been performed upon Marsango and the claim of traumatic epilepsy had been made, the reserve was increased to $17,500. Shortly prior to the date the personal injury action was orginially set for trial, the respondent's representatives considered the Marsango claim at a "claims conference" and afterward again increased the reserve to $25,000 because "anything is possible" and Marsango's demand for settlement was then in that amount.

Respondent's trial counsel was of the opinion that the maximum exposure

in the Marsango lawsuit was $18,000 and he could not conceive that the verdict might exceed the policy limits of $25,000. It was determined by respondent as a matter of tactics to await developments at trial before making an offer of settlement to Marsango's counsel. Shortly prior to trial, Marsango through his attorney offered to accept $24,500 in settlement of the claim. The offer was made without substantial effort to determine Sheinbaum's ability to respond in damages if the judgment in the personal injury action should exceed the $25,000 policy limit, but with knowledge that he earned between $18,000 and $20,000 per year.

Respondent forwarded a copy of the letter containing the $24,500 settlement offer to Lewis Baker, counsel for Sheinbaum. Respondent's letter forwarding the offer summarizes the case and states: "It is, therefore, the position of the Inter-Insurance Exchange of the Automobile Club of Southern California along with the recommendation of our trial counsel, Mr. Mullen, that we not honor the demand of $24,500." The letter also states: "We are preparing for trial and would welcome any discussion you or Mr. Sheinbaum would wish to have with us regarding this matter. Further, please feel free to review any portion of our file and participate in the trial if you deem it necessary." Baker forwarded the communication from respondent to his client Sheinbaum with the note: "The enclosures are self-explanatory. I concur." Baker also expressed his agreement with the rejection of the $24,500 settlement offer in a telephone conversation with respondent's counsel.

Respondent rejected the $24,500 offer and made no counterproposal. Trial of the personal injury action commenced. Sheinbaum determined that it was not necessary that Baker, his personal attorney, be present at the trial since he felt able to keep him informed of trial developments. Sheinbaum was present at all stages of the trial and reported continuously to Baker. During the three- or four-day period of the trial, Sheinbaum asked respondent's representatives whether they intended to make an offer of settlement stating that "selfishly he wanted the case settled."

After the evidence had been presented in the personal injury action, respondent determined to make an offer of settlement of $12,500. The intention was communicated to Sheinbaum who commented that the offer was "extremely fair." Sheinbaum inquired whether respondent would pay $15,000 if appellant made a counteroffer. Respondent's representative said he was unable to answer that question because he did not know what the response of appellant's counsel to the offer would be. When asked whether the demand should be paid, assuming it remained at $24,500, Sheinbaum responded, "Absolutely not."

Appellant refused the $12,500 offer and countered with a demand of

$25,000 plus costs. Respondent refused the demand. The jury in the personal injury action returned a verdict of $90,000.

Subsequent to the judgment in the personal injury action, respondent paid appellant $25,000 (the policy limit) plus costs. Sheinbaum paid appellant $1,500 and assigned to him "any and all cause, or causes of action, whether arising in tort or contract at law or in equity against the Automobile Club of Southern California . . ., known or unknown, arising out of negligence or the breach of any contract, covenant or legal obligation requiring good faith of said Automobile Club of Southern California, its agents or employees, attorney or attorneys, known or unknown, to settle and compromise a certain personal injury action entitled, 'Vincent F. Marsango, plaintiff, v. Stanley K. Sheinbaum, defendant,' . . . within the limits of a policy of liability insurance issued by said Automobile Club of Southern California . . ." Appellant as assignee then brought the action against respondent which is now before this court.

Appellant's complaint alleges: the fact of the assignment from Sheinbaum, the failure of respondent to offer to settle appellant's claim against Sheinbaum for the policy limit, and that respondent "failed to act in good faith, pursuant to the duty to . . . Sheinbaum that they . . . had under the provisions of said policy of insurance in refusing to accept the offer of the plaintiff to settle said action for the sum of $24,500.00 or in refusing to accept the subsequent offer of plaintiff to settle said action for $25,000.00 plus costs of suit before the verdict was rendered in said action and, on the contrary, said defendants . . . acted in bad faith . . ."

Appellant's contentions in his pretrial statement incorporated in the pretrial order of the trial court were: "that the defendants were in bad faith in failing to accept and to pay an offer to compromise an action plaintiff had brought against said Sheinbaum for the sum of $25,000.00 as it was the duty to said Sheinbaum by the defendants under the provisions of the policy of insurance issued to said Sheinbaum for public liability with limits of $25,000.00. Plaintiff contends that he is the assignee of the right of said Sheinbaum to institute a suit for bad faith failure to settle against the defendants resulting in damage to said Sheinbaum of $63,655.95 . . ."

The lawsuit now before us was tried before a jury on the theory that respondent's failure to settle the personal injury action was in bad faith. Counsel argued the factual issue of bad faith, and the jury was instructed accordingly. The jury gave its verdict for respondent, judgment was entered, and appellant perfected the appeal which is now before us.

### Issues on Appeal

Appellant contends: (1) respondent's liability to its insured for any judgment in excess of its policy limits was established as a matter of law

when it rejected an offer to settle within the policy limits regardless of lack of bad faith on the part of respondent and regardless of the reasonableness of respondent's conduct in rejecting the offer; and (2) respondent's rejection of the offers of settlement was unreasonable as a matter of law and therefore in bad faith as that term is defined in the context of the case at bench. In his closing brief appellant also contends for the first time that the jury in the trial court was not properly instructed on the law applicable to the case. We reject this latter contention because it is untimely made without specification of good cause for the failure to present it in appellant's opening brief. (*San Francisco Examiner Div., Hearst Publishing Co.* v. *Sweat,* 248 Cal.App.2d 493 [56 Cal.Rptr. 711] hearing denied by Supreme Court April 12, 1967.)

### Absolute Liability

■ Appellant argues that respondent's liability is to be determined not on the basis of its bad faith or unreasonable rejection of the settlement offers, the theory upon which the case was tried in the trial court, but rather upon the principle that respondent having been afforded the opportunity to settle within its policy limits is, as a matter of law, liable to its insured for any judgment that was rendered in excess of those limits.

Appellant may not on the record before us argue this theory of liability. The general rule is that a party to an action may not for the first time on appeal change his theory of the cause. We have found only two exceptions to the general rule: (1) an up to now unarticulated exception where after trial there is a change in judicially declared law which validates a theory that would under the case law as it existed at the time of trial necessarily have been rejected if presented to the trial court (*Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168]; for an analogous situation in criminal appellate procedure see *People* v. *Kitchens,* 46 Cal.2d 260, 262 [294 P.2d 17]); and (2) where the theory presented for the first time on appeal involves only a question of law determinable from a factual situation present in the record which was not actually or potentially open to question in the trial court. (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 340 [303 P.2d 738].)

■ The first exception is inapplicable to the case at bench. Appellant in asserting his theory of liability irrespective of reasonableness of conduct or good faith on the part of the insurer relies upon language of our Supreme Court in *Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173] which comments favorably upon such a theory of absolute liability asserted by amicus curiae in that case. The

decision in *Crisci* was published sufficiently before the time of trial of the case at bench to have permitted the theory to have been presented to the trial court.

■ Neither is the second exception applicable. Contrary to appellant's contention, his change in theory in the case at bench involves not a pure question of law but rather contemplates a factual situation, the consequences of which are potentially open to controversy, which was not placed in issue in the trial court. Appellant's only rights in the case now here before us are as the assignee of Sheinbaum. He has no greater right than that conveyed to him by the assignment under which he has sued. That assignment on its face purports not to convey all claims that Sheinbaum possessed against respondent arising out of its conduct of the defense of the personal injury action but only those "arising out of negligence or the breach of any contract, covenant or legal obligation requiring good faith."

Appellant by pleading and trying his case on a theory of "bad faith" alone has precluded respondent from raising the factual issue of whether a claim based upon the theory of absolute obligation of the respondent insurer to settle was encompassed within the assignment. That issue is one upon which parol evidence is admissible (*Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641]), and we cannot now rule that as a matter of law respondent would not have prevailed if the issue had been before the trial court.[1]

We are cognizant of the fact that if the case at bench were to be reversed upon the theory now asserted by appellant, respondent would have the opportunity upon retrial to litigate the factual situation open to controversy but not presented originally to the trial court because of the theory there adopted by appellant. The existence of that opportunity, however, neither satisfies the test adopted by our Supreme Court nor meets the standard of fairness to the litigants. Litigation is an adversary process contemplating an element of risk to all parties. To permit a change of theory on appeal is to allow one party to deal himself a hole card to be disclosed only if he loses. Even if that device does no more than give him a second chance, it has unbalanced the inherent risk of the litigation and put the other party at a disadvantage. Such a process is to be allowed if at all only under unusual circumstances— as for example where the question is purely one of law so that it cannot be said that the balance of litigation risk was altered by the failure to raise it at trial. The record before us discloses no such circumstances.

---

[1]Sheinbaum testified that he intended to assign all of his claims against respondent to appellant. Respondent, however, had no reason to challenge that testimony by reason of the theory of the case in the trial court.

## Sufficiency of Evidence to Support the Verdict

Appellant contends also that the evidence before the trial court established as a matter of law that respondent's refusal of appellant's settlement offers was unreasonable and therefore in "bad faith." We do not agree.

■ Whether an insurer's failure to settle within the policy limits constitutes bad faith to its insured is a question of fact to be determined by the jury (*Critz* v. *Farmers Ins. Group,* 230 Cal.App.2d 788, 796 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142] unless the evidence is such that only one conclusion may reasonably be drawn from it. (*Hodges* v. *Standard Acc. Ins. Co.,* 198 Cal.App.2d 564 [18 Cal.Rptr. 17].) If there is any substantial evidence to support the jury verdict it must be sustained on appeal (*Davy* v. *Public Nat. Ins. Co.,* 181 Cal.App.2d 387 [5 Cal.Rptr. 488].) ■ The record in the case at bench discloses substantial evidence to support the jury's conclusion that respondent did not act in bad faith in refusing the settlement offers.

■ The test of "bad faith" in the context of the failure of an insurer to settle within policy limits is stated in *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]. There our Supreme Court says: ". . . the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty; that in determining whether to settle the insurer must give the interests of the insured at least as much consideration as it gives its own interest; and . . . when 'there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim'. [Citation.] In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer. [Citations.]"

■ The record before us discloses evidence that respondent's rejection of appellant's offers to settle was not capricious but rather the result of an evaluation of the lawsuit based upon extensive investigation and pretrial discovery. There is evidence that experienced trial counsel had, on the basis of the facts as developed in the preparation of the case, concluded that there was no exposure beyond the policy limits. Respondent's insured after advice by his own counsel concurred in the rejection of appellant's demand for $24,500 and agreed that the offer of settlement made by respondent in the sum of $12,500 was appropriate. The jury could have inferred from the conduct of appellant's counsel, in demanding no more than the policy limits without significant investigation of the ability of the insured, himself, to respond in damages, that appellant's counsel shared the opinion of respond-

ent's attorney that there was no real possibility of a judgment in excess of $25,000. Under these circumstances, it cannot be said that the record discloses such a great risk of recovery beyond the policy limits as to have required respondent to have settled out of consideration for the interest of its insured. Nor can it be said that the jury could not properly have determined from the evidence that a prudent insurer without policy limits would have accepted appellant's settlement offer or otherwise conducted itself in a manner different from respondent.

Appellant in an extensive but somewhat selective analysis of the evidence presented to the trial court contends that respondent's "bad faith" is established as a matter of law by: (1) its failure to present a counteroffer of settlement prior to the commencement of the trial of the personal injury action rather than at the conclusion of the evidence in that trial; (2) the existence of a policy reserve of $25,000 (the policy limit); (3) the failure of respondent to give due consideration to appellant's claim of traumatic epilepsy; (4) knowledge by respondent of its probable liability and the extent of appellant's claims; and (5) conduct of respondent said by appellant to have consciously built "a defense to excess liability." Appellant also argues in his closing brief (for the first time in the litigation) that respondent is barred by the doctrine of collateral estoppel from contesting the validity of the jury verdict in the personal injury action and from that premise reasons that it was therefore unreasonable as a matter of law for respondent to have rejected any settlement offer in an amount less than that verdict.

In essence, the factual contentions of appellant seek to reargue the case decided by the jury. They consist of matter that could properly have been presented to that body but which does not require reversal of a verdict against appellant based upon substantial contrary evidence. Appellant's argument with respect to collateral estoppel must be rejected both because it is untimely and because it ignores the test of liability here applicable. On the theory of the case as presented to the trial court, respondent's liability depended upon its bad faith, actual or implied from its unreasonable conduct, not upon its mistaken failure to settle. The jury verdict in excess of that which respondent offered in settlement may be evidence that respondent's conduct was unreasonable, but it does not establish that fact as a matter of law.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 10, 1969, and appellant's petition for a hearing by the Supreme Court was denied January 8, 1970. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.