[Civ. No. 34842. First Dist., Div. Four. Apr. 30, 1975.]

ELAINE CAIN et al., Plaintiffs, Cross-defendants and Respondents, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant, Cross-complainant and Appellant.

784

**COUNSEL**

Nagle, Vale, McDowall & Cotter and Vernon V. Vale for Defendant, Cross-complainant and Appellant.

Bishop & Barry, Nelson C. Barry and Neil R. Bardack for Plaintiffs, Cross-defendants and Respondents.

**OPINION**

**EMERSON, J.\*—**

### PRELIMINARY STATEMENT

Elaine Cain was injured in a single car collision. The automobile involved in the accident was owned by Bing Woo Jew and insured by State Farm Mutual Automobile Insurance Co. (State Farm); the liability limits of this policy were $25,000.

Elaine Cain subsequently filed an action against Bing Woo Jew. Prior to trial settlement offers were put forth by Miss Cain's attorney; these were rejected by State Farm although the offers were within the policy limits. The jury found that Jew had been operating the vehicle at the time of the accident, and returned a verdict in the amount of $57,883 in favor of Cain. Of this amount $25,000 was paid to Cain by State Farm pursuant to the Jew insurance policy.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Jew thereafter executed a written assignment to Cain transferring to her any cause of action he might have against State Farm by virtue of its failure to settle within the policy limits, including the right to sue for the amount of the excess verdict. He reserved to himself, however, any cause of action for physical injuries sustained as a result of the failure to settle. Subsequently, Cain and Jew jointly brought the present action against State Farm alleging bad faith breach of contract and seeking compensatory and exemplary damages. The jury returned a verdict in the amount of $32,883.69 (the amount of excess over the policy limit) in favor of Cain, and a verdict in favor of Jew in the amount of $25,000 compensatory damages and $115,000 punitive damages. Judgment was entered on these verdicts and State Farm appeals.

## Additional Facts

Immediately after the accident Jew told investigating police officers that he had been driving the car. Shortly thereafter, upon learning that Cain had been seriously injured and might die, Jew changed his statement and said that Cain had been driving at the time of the accident. He disclosed these facts to his insurer.

State Farm referred the file to counsel and unquestionably investigated the case most thoroughly. State Farm's attorney testified at the trial of this case that he realized that Cain had been seriously injured, and that were liability established her damages would exceed the policy limits of $25,000. The attorney also recognized Jew's credibility problem and apprised State Farm as follows: " 'First of all, our man damaged his credibility by lying at first to the police—assuming it was a lie—telling them that he was the driver . . . it will come out that Woo [Bing Woo Jew] did not change his story until after the officer had found out from the hospital and told Woo that the girl might die and . . . of the possibility that the case would involve a manslaughter charge. It can be argued with some force that as between the two versions that Woo gave the police he had a more compelling reason to lie in the second version . . . .' " Counsel for State Farm also informed the company that Miss Cain would be " '. . . a very good witness in her own behalf . . . [and] that the plaintiff would have the advantage on the all-important issue of witness ability and credibility as opposed to our 39-year-old, married Chinese sailor insured.' "

Also known to State Farm and its attorneys, arising out of the initial investigation of this accident, were other factors that weighed on the

issue of the credibility of its insured. The windshield of the vehicle was broken on the right side generally in front of the passenger's seat, yet Jew sustained no severe head injuries. Cain however had a depressed skull fracture on the right side of her head which ran in a horizontal fashion. State Farm recognized this as a factor bearing on the issue of credibility.

After the receipt of Cain's demand to settle the lawsuit for $25,000 the ambulance driver was deposed by State Farm. It was his opinion that Jew was the driver of the vehicle at the time of the accident. He stated that Jew was standing outside the vehicle when the ambulance arrived at the scene, that Miss Cain was found on the passenger side of the car, and that it appeared to him that Cain had been thrown into the windshield from a position in the passenger's seat. A second settlement offer was thereafter made by plaintiff Cain. At this point State Farm realized that there was sufficient evidence to support a plaintiff's verdict, and that if there were a plaintiff's verdict, it would be far in excess of Jew's policy limits. Nonetheless, State Farm refused to consider the settlement offers, apparently taking the position that the issue of liability was worth the risk of litigation.

### SUFFICIENCY OF THE EVIDENCE AS TO THE AWARDS OF COMPENSATORY DAMAGES

State Farm urges that the Cain award, and the award to Jew of damages for mental distress, should be reversed on the grounds that there is insufficient evidence to support a finding of bad faith.

Under California law, every liability insurance policy carries an implied covenant obligating the insurer to act in good faith in considering settlement offers. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198, 68 A.L.R.2d 883].) This obligation requires that the insurer give the offer its intelligent and informed consideration; that the insurer advise the insured of any settlement offers, together with the results of its investigations; and that the insurer give equal consideration to the interests of its insured. A breach of any of these obligations, when coupled with a refusal to settle within the policy limits, renders the insurer liable for the entire amount of a judgment against its insured, including any portion in excess of policy limits. (*Davy* v. *Public National Ins. Co.* (1960) 181 Cal.App.2d 387, 394-396 [5 Cal.Rptr. 488].) It is not disputed that State Farm retained experienced counsel, undertook extensive investigation, and informed Jew of all settlement offers. The issue therefore is whether State Farm failed to give

equal consideration to the interests of its insured, Bing Jew, in refusing the settlement offers. The test to be applied in making such a determination is ". . . whether a prudent insurer *without policy limits* would have accepted the settlement offer." (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173] [italics added].)

■ Liability need not be predicated upon a showing of dishonesty, fraud or concealment, although evidence of the latter is obviously relevant to a determination that the insurer failed to give consideration to the insured's interest. Liability is not imposed for a bad faith breach of the contract, but for failure to meet the duty to accept reasonable settlements; thus, liability may exist when the insurer unwarrantedly refuses an offered settlement where the most reasonable manner of disposing of the claim is by accepting the settlement. (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, 430.) "[W]hen 'there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim.' " (*Crisci* v. *Security Ins. Co., supra,* at p. 429.)

■ Whether the insurer has acted unreasonably, and hence in bad faith, in rejecting a settlement offer is a question of fact to be determined by the jury. If there is any substantial evidence to support the jury verdict, it must be sustained on appeal. (*Marsango* v. *Automobile Club of So. Cal.* (1969) 1 Cal.App.3d 688, 696 [82 Cal.Rptr. 92].) ■ There is clearly sufficient evidence in the case at bench to sustain the jury's findings. In addition to the facts set forth above, there was testimony from Wilson Young, Jew's attorney,[1] to the effect that State Farm had indicated to him that it was definitely not interested in settlement; he further testified that he had received no correspondence or other communication from State Farm which led him to believe that State Farm was giving equal consideration to Jew's financial interests. There was also expert testimony to the effect that State Farm failed to give any consideration at all to Jew's interests. It may therefore be concluded that State Farm, through its agents and attorneys, knew of the severity of damages suffered by Cain and of the probability of an excess verdict. The evidence as a whole supports a finding that State Farm acted unreasonably in rejecting the settlement offers and that it failed to give equal consideration to the interests of its insured.

---

[1]Mr. Young was retained by Bing Woo Jew, and consulted with State Farm's counsel, but he did not direct or control settlement negotiations or the defense of Miss Cain's suit.

## Punitive Damages

█ Appellant argues that this was not a proper case for an award of punitive damages, that the record did not justify submitting the question of punitive damages to the jury, and that it was therefore error to instruct on punitive damages.

█ It is established that an insurer owes to its insured an implied-in-law duty of good faith and fair dealing, and that it should do nothing to deprive the insured of the benefits of the policy. Included within this duty in the case of a liability insurance policy is the duty to act reasonably and in good faith to settle claims against the insured by a third person. The violation of that duty sounds in tort, notwithstanding that it may also constitute a breach of contract. (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, 429, 432-434.) Consequently, punitive damages may be awarded in an action arising out of a breach of the covenant of good faith and fair dealing which is implied in every liability insurance policy. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 401-402, 404 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

The holding in the *Fletcher* case was upheld by the Supreme Court in the decision of *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032].[2] Although the Supreme Court did not explicitly discuss the issue of punitive damages, ". . . the major thrust of the *Gruenberg* holding is that such action on the part of insurers will not be tolerated and a breach of . . . [the covenant] of good faith and fair dealing will lead the imprudent insurer down the path of exemplary damages." (Note, *Good Faith and Fair Dealing in Insurance Contracts: Gruenberg v. Aetna Insurance Co.* (1974) 25 Hastings L.J. 699, 714.)

Appellant relies on the case of *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103], in support of its contention that this was not a proper case for an award of punitive damages. There, the reviewing court concluded that the trial court did not abuse its discretion in finding that the evidence was insufficient to support a finding of exemplary damages and in ordering a new trial on that issue. The basis of the trial court's order was that defendant was not put on notice by cases previously decided, that its interpretation of the

---

[2]The *Fletcher* and *Gruenberg* cases both dealt with the failure of the insurer to act in good faith and fairly in handling the claim of an insured, and extended the *Crisci-Comunale* principle to hold that the implied covenant of good faith encompasses a duty not to unreasonably withhold payments due under a policy.

█

policy was incorrect and there was insufficient evidence of a practice in the insurance industry to pay the disputed claim and then file a lien in the workmen's compensation proceeding to recover payments made. The Supreme Court in *Silberg* reiterated the basic principle that punitive damages may be awarded where the defendant has acted ". . . with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights." (*Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d 452, at p. 462.)

The record in the instant case supports a finding that defendant State Farm tortiously breached the implied covenant of good faith and fair dealing by its wrongful refusal to settle within the policy limits and by failing to give equal consideration to the interests of its insured. In addition, there is evidence that after the verdict in Cain v. Jew had been rendered against the insured, State Farm refused to accept any responsibility for the excess amount, and, contrary to advice of their own counsel, rejected an offer to settle the verdict for $55,000 even though they were aware that their insured's personal assets would be wiped out without satisfying the excess verdict, thereby forcing him into bankruptcy, and that the relationship between the insured and Miss Cain would be exposed, resulting in the possible termination of Jew's marriage. Thus, there is evidence in the record to support a determination that State Farm not only failed to give equal consideration to the interests of Jew, but acted with a conscious disregard thereof. It was not error to instruct on the issue of punitive damages.

### The Effect of the Jew-Cain Assignment Upon Jew's Cause of Action

Appellant's next contention is that, as a matter of law, Jew had no cause of action against State Farm. The question is stated by appellant as follows: " 'Did Bing Woo Jew waive his right to damages by attempting to improperly split a cause of action?' " Appellant does not challenge the assignability of the cause of action in the instant case; rather, it is argued that the assignment in question totally divested Jew of any right to recover compensatory or punitive damages from State Farm.

At common law, a partial assignee had no legal standing to sue; the underlying rationale was that the original creditor could not split his cause of action and sue the debtor in two actions, and he could not bring about the same result by assigning part of the claim to another and subjecting the debtor to two suits by different plaintiffs. Enforcement of

a partial assignment of a claim was permitted in equity, however, by the process of requiring joinder of all interested parties; i.e., the assignor and all partial assignees. (*D'Orazi* v. *Bank of Canton* (1967) 254 Cal.App.2d 901, 905 [62 Cal.Rptr. 704].) ". . . under the codes, which have merged legal and equitable actions and adopted the equity procedure of joinder, there is no longer any procedural obstacle to enforcement of the partial assignment. The plaintiff partial assignee may sue by joining the partial assignor . . . ." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 99, p. 1775.) It therefore follows that the partial assignor may sue upon joinder of the partial assignee. (3 Witkin, *supra*, § 100 at p. 1776.)

In approving the above procedure, the Supreme Court in the case of *Martin* v. *Howe* (1922) 190 Cal. 187, 193-194 [211 P. 453], observed: " 'Under our system of practice . . . the real objection . . . is not a want of *facts*, but a want of *parties*. The defendants are entitled, if they so desire, to have all the parties having an interest in the subject-matter before the court, in order that its judgment shall be a final determination of the whole matter, and leave nothing to be done by piecemeal.' [¶] 'An entirely different situation is presented here, where these parties are joined, and can defend their rights in the subject-matter in the one action, than in the ordinary case of splitting a cause of action, where one person sues to recover part of his claim in one action, and later brings a second action to recover the remainder.' "

In support of its position, appellant relies upon the case of *Purcell* v. *Colonial Ins. Co.* (1971) 20 Cal.App.3d 807 [97 Cal.Rptr. 874]. In that case, an insured brought an action against his insurance company seeking to recover damages for emotional distress resulting from the insurer's wrongful failure to settle with the injured parties. The insured had previously executed a written assignment transferring to the injured parties ". . . *any and all causes of action which he has now or may have, now or in the future, against Colonial* . . .' " and a separate suit had been filed against the insurance company by the injured party for the excess verdict. (*Purcell* v. *Colonial Ins. Co., supra,* at pp. 810-811.) The court recognized that the wrongful failure to settle within policy limits may give rise to two forms of damages; viz., compensation for pecuniary loss and general damages for mental distress, but concluded that plaintiff insured was possessed of a single cause of action against defendant insurance company. It was held that the assignment of the cause of action to the injured parties resulted in a waiver of any claim for purely personal damages by the insured; i.e., the insured "could not split the cause of action." (*Purcell* v. *Colonial Ins. Co., supra,* at pp. 812, 814.)

The case at bench is distinguishable from *Purcell* in at least two respects. First, the terms of the Jew-Cain assignment explicitly reserved to Jew any cause of action which he might have against State Farm for physical injuries sustained by him as a result of its failure to settle within the policy limits. Unlike the *Purcell* assignment, this was not a blanket assignment of all causes of action against State Farm. More significantly, the cases also differ procedurally in that here Cain and Jew are joined as parties plaintiff in a single suit against State Farm, while in *Purcell* separate suits were instituted by the injured party and by the insured. The procedure utilized by plaintiffs Cain and Jew is clearly in accord with the modern rules governing partial assignments, and comports with the "primary right" theory advanced by Pomeroy and followed in California. (See Pomeroy, Code Remedies (5th ed. 1929) pp. 528, 535; see also *Holmes* v. *David H. Bricker, Inc.* (1969) 70 Cal.2d 786, 789 [76 Cal.Rptr. 431, 452 P.2d 647].)

Because, in this case, the partial assignor and the partial assignee are joined as parties plaintiff in the same lawsuit, the judgment is binding upon both plaintiffs, and appellant is protected from future litigation arising out of the same facts under the doctrine of res judicata. It therefore appears that appellant's reliance on the *Purcell* case is misplaced, and that its contentions in this regard are not well taken. ■ The same is also true of appellant's assertion that the wording of the Cain-Jew assignment precludes Jew's recovery of damages for mental distress. By the terms of the assignment, Jew reserved to himself ". . . that cause of action .. . for physical injuries . . ." sustained as a result of State Farm's failure to settle within the policy limits. It is argued that the word "physical" cannot be interpreted to include compensatory or punitive damages for mental distress. This contention is untenable. Under California law ". . . disturbances of the nervous system caused by mental shock, excitement, and so on, are classed as physical injuries . . . ." (*Taylor* v. *Pole* (1940) 16 Cal.2d 668, 671 [107 P.2d 614]; see also *Dryden* v. *Continental Baking Co.* (1938) 11 Cal.2d 33, 39-40 [77 P.2d 833].)

■ Appellant assigns as error the giving of plaintiff's proposed jury instruction No. 4, which reads as follows: "The size of a judgment recovered in a personal injury action, when it exceeds the policy limits, although not conclusive, presents an inference that the value of the claim is equivalent to the amount of the judgment, and the acceptance of an

offer within those limits is the most reasonable method of dealing with the claim."

This instruction is a direct quote from the Supreme Court decision in *Crisci v. Security Ins. Co., supra,* 66 Cal.2d 425, 431. It is recognized that statements of the law contained in opinions of reviewing courts are the primary source of jury instructions. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 202, p. 3020.) Appellant challenges this instruction on the grounds that no mention is made of such an inference in section 600 of the Evidence Code, which sets forth an exclusive list of conclusive and rebuttable presumptions. Appellant's argument is without merit. An inference is clearly not a presumption. The jury was fully instructed on the meaning of the word "inference," its nature and its effect. There was no error in giving the challenged instruction.

Appellant claims that the trial court erred in failing to give its proposed instructions relating to the affirmative defenses of estoppel and failure to state a cause of action. It is not disputed that a party has a right to instructions on his theory of the case, if it is reasonable and finds support in the pleadings and evidence. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 192, p. 3012.) In this case, however, the affirmative defenses on which the disputed instructions were based were clearly untenable. Appellant's proposed instruction No. 28 states: "In this case Mr. Jew has assigned to Miss Cain his purported cause of action against State Farm Insurance Company. In doing so he assigned a single and indivisible cause of action. I therefore direct you to find a verdict as to the case of Bing Woo Jew in favor of the defendant State Farm Mutual Automobile Insurance Company and against Bing Woo Jew." As we have earlier pointed out, the Jew-Cain assignment did not preclude Jew's bringing a cause of action against State Farm. Therefore, defendant's proposed instruction was incorrect as a matter of law.

Similarly, the proposed instruction as to estoppel was not warranted under the facts of this case. The Supreme Court in the case of *Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d 566, 578, stated that ". . . the duty of good faith and fair dealing on the part of the defendant insurance companies is an absolute one;" that even though the duty arises from an existing contractual relationship, it is independent of the performance of plaintiff's contractual obligations. Hence, the defense of estoppel was not available to State Farm.

Appellant's claim that the court should have instructed the jury upon all its affirmative defenses is not well taken. We have previously

discussed the defenses of failure to state a cause of action and estoppel, as well as the propriety of the instruction on punitive damages. Appellant did not request instructions on the remaining affirmative defenses. It is well settled that in order to complain of failure to instruct on a particular issue, the aggrieved party must request the specific proper instruction. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 194, p. 3013.)

## THE SELIGSON LETTER

■ Appellant assigns as error the introduction into evidence of plaintiff's exhibit No. 82, hereinafter referred to as the "Seligson letter." It is argued that this material should have been excluded under Evidence Code section 352, which gives the trial court the discretion to exclude relevant evidence where its probative value is substantially outweighed by its prejudicial effect. The Seligson letter was written by Attorney Robert A. Seligson to State Farm shortly after the excess verdict was entered against Jew in the initial suit. Mr. Seligson was a member of the law firm retained by State Farm to defend that suit. In the letter he advised State Farm that it should pay the amount of the judgment which had been entered in the Cain-Jew suit and, in support of his opinion, quoted excerpts from the *Crisci* opinion.

In reviewing the exercise by the trial court of its discretion, under Evidence Code section 352, an appellate court is neither authorized nor warranted to substitute its judgment for that of the trial judge. Relief is available only where the alleged abuse of discretion clearly constitutes a miscarriage of justice. (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 242, p. 4234.) The record shows that the trial judge considered appellant's objections, and weighed the probative value of the letter against its possible prejudicial effect. In addition, the court ordered that the more prejudicial passages of the letter be deleted before it was read to the jury. The court also admonished the jury that the *Crisci* dictum contained in the letter did not reflect the present state of the law. It cannot be said that the trial court's ruling on the admissibility of this exhibit constituted an abuse of discretion resulting in a miscarriage of justice. (*Brown* v. *Newby*, *supra*, 39 Cal.App.2d 615.)

## TESTIMONY OF WILSON YOUNG

Appellant claims error in the admission of the testimony of Wilson Young, apparently on the ground that the jury was misled thereby. Mr.

Young initially testified that his bill for legal services to Jew was $5,000, but that he was not able at that moment to calculate what portion of this amount was for services after the rendition of the Cain-Jew verdict. The following day Mr. Young was recalled to the stand, and stated that the amount charged for legal services performed after the entry of the excess· verdict was $600.

It is difficult to comprehend how this testimony could have misled or confused the jury. Appellant argues that the jury's request during its deliberations for instructions on the issue of attorney's fees related to Mr. Young's testimony. There is nothing in the record to indicate that this was the case; rather, it appears that the jury was considering an award of attorney's fees to Nelson Barry, plaintiffs' counsel in the instant action.

It is well established that on appellate review, error will not be presumed. (*Ford* v. *Holton* (1855) 5 Cal. 319, 321.) Appellant fails to demonstrate that the admission of Young's testimony was error, much less prejudicial error necessitating reversal of the verdict in favor of Bing Woo Jew.

### EXCLUSION OF TRAVELERS INSURANCE COMPANY CORRESPONDENCE

█ Appellant assigns as error the trial court's exclusion of certain correspondence with Travelers Insurance Company, with whom Mr. Jew was insured under a homeowner's policy.[3] Appellant contends that the proferred evidence was relevant as tending to show their good faith. The trial court, however, ruled that the evidence was inadmissible on the ground that it was related to an offer of settlement and that it is the policy of the law to exclude such evidence. The court also stated that such evidence was irrelevant and highly prejudicial.

Evidence Code section 1152 provides that evidence of an offer to compromise, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove liability. Appellant argues that the correspondence in question, although clearly involving settlement negotiations, was offered not to prove liability but to establish State Farm's

---

[3]It was initially believed that Jew might be partially covered under his homeowner's policy with Travelers. However, Travelers ultimately denied any coverage and the Supreme Court in the case of *Huggins* v. *Yoshiwara* (1970) 2 Cal.3d 200 [84 Cal.Rptr. 709, 465 P.2d 845], held that a similar homeowner's policy did not provide coverage for an automobile accident occurring away from the premises of the insured. (See also *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841].)

good faith; i.e., that State Farm was giving consideration to the interests of its insured by seeking out other possible coverage.

It would appear, however, that the fact of compromise negotiations between Mr. Jew and Travelers (which compromise never took place) was, as the trial court ruled, irrelevant to the issue of whether State Farm had unreasonably refused to settle within the policy limits. Furthermore, there was already evidence in the record to the effect that State Farm had attempted to secure coverage under this homeowner's policy. Therefore, even if relevant, the evidence in question was cumulative on a collateral issue and could have been excluded on that ground. (Witkin, Cal. Evidence (2d ed. 1966) § 1094 at pp. 1012-1013.) Thus, it appears that the trial court did not err in excluding the Travelers correspondence.

### MISCONDUCT OF RESPONDENTS' ATTORNEY

As its final assignment of error, appellant argues that reversal is required by the improper argument of counsel. This contention is based upon the fact that plaintiffs' attorney made the following statement with respect to the issue of punitive damages during rebuttal argument: "One thing about the punitive damages, I didn't mention a figure to you then, and I'm not going to mention a figure to you now, but I say if you are thinking in the area of $100,000, that's not enough, that's not even stubbing their toes, they would laugh at you, you know, 'If that's all they can do to us, it's not costing us anything.' " Appellant submits that ". . . this was improper rebuttal argument which ordinary diligence could not have guarded against and that in view of the jury's finding of $115,000.00 punitive damages was extremely prejudicial, . . .".

It should be noted that no objection to this line of argument was interposed by defense counsel. The court itself admonished plaintiffs' counsel by saying, "I think since you did not mention any figure in your opening argument, you better not mention any figure now, Mr. Barry." Mr. Barry immediately responded, "Right" and thereafter no mention of any dollar amount was made.

"A long established principle of appellate review calls for raising the error in the trial court. In the usual case (an improper question or remark) it is seldom possible to object in advance; the procedure is to 'assign' the statement as misconduct and ask that the jury be instructed to disregard it. If this is not done the error is waived unless the misconduct was of so aggravated a character that it could not be cured by any

instruction." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 163, p. 2983; see also *Horn* v. *Atchison T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561].)

As noted above, defense counsel made no objection to the challenged statement; it was not assigned as misconduct at trial, nor was any further admonition requested. Furthermore the remark, while technically impermissible in rebuttal argument, was not so prejudicial that it could not have been cured by a timely admonition by the court.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied May 20, 1975, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1975.