[Civ. No. 17755. Fourth Dist., Div. Two. Jan. 23, 1978.]

NORTHWESTERN MUTUAL INSURANCE COMPANY, Plaintiff and Respondent, v. FARMERS' INSURANCE GROUP et al., Defendants and Appellants.

1032

1034

COUNSEL

Moore, Graves & Madory and Thomas B. Cummings for Defendants and Appellants.

Donald S. Gillespie and Marshall Miles for Plaintiff and Respondent.

OPINION

KAUFMAN, J.—This appeal presents two questions apparently not heretofore confronted by the appellate courts of this state: (1) whether a permissive user of an automobile who is an insured under the omnibus clause of the vehicle owner's liability insurance policy has a right of action against the owner's insurer for its bad faith refusal to effect settlement within its policy limits, and (2) if so, whether the permissive user's automobile liability insurer, whose coverage constitutes excess insurance, may recover from the owner's insurer, whose coverage constitutes the primary insurance, the amount the excess insurer was required to pay on a judgment against the permissive user as a result of the primary insurer's bad faith refusal to settle. We conclude both questions are properly answered affirmatively.

Plaintiff Northwestern Mutual Insurance Company will be referred to as plaintiff or Northwestern. Defendants Farmers Insurance Group, Farmers Insurance Exchange and Mid-Century Insurance Company are related and will be collectively referred to as defendants or Farmers.

Barnett Kessler, apparently a resident of Utah, was the owner of a 1958 Chevrolet pickup truck. He loaned the pickup truck to his adult son, Robert Kessler, for a trip to Southern California. On June 29, 1963, at a speed of about 90 miles per hour, on a straight road and while the left passing lane was clear, the pickup rear-ended a Coors Beer truck about 8 miles east of Baker, California. The four occupants of the pickup were ejected and killed. In addition to Robert Kessler, they were Russell Kessler, another adult son of the vehicle's owner, Larry Kessler, the 9 or 10-year-old son of Russell Kessler, and Ronald Eberhart, a 15-year-old friend of the Kessler family.

Because all four occupants of the pickup truck were ejected from the vehicle, it was difficult to determine who was the driver. Some evidence indicated Robert Kessler was the driver. Other evidence, particularly his state of partial undress and the nature of his injuries, suggested Robert Kessler was not driving at the time of the accident. Utterances of Larry Kessler prior to his death, overheard by the ambulance attendants, tended to eliminate Russell Kessler and Larry himself as the driver. The remaining possibility was that Ronald Eberhart was driving, and he had suffered some injuries consistent with that premise. However, he was only 15 years old and unlicensed to drive. Moreover, Larry Kessler's words referred to the driver as "the man," making it somewhat unlikely the reference was to 15-year-old Ronald Eberhart.

The identity of the driver was significant primarily because there was evidence that Robert Kessler had a blood alcohol level of .8. This, in turn, was significant because, although their status was in question, both Larry Kessler and Ronald Eberhart may well have been guests in the vehicle. *Brown* v. *Merlo,* 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], which declared California's automobile guest statute unconstitutional, had not yet been decided, and the guest statute (former Veh. Code, § 17158) was in effect. If Larry Kessler and Ronald Eberhart were guests, therefore, no recovery on account of their deaths could be

had except upon proof that the driver was intoxicated or guilty of wilful misconduct.

Defendants were the automobile liability insurer of Barnett Kessler, the owner of the pickup truck. Their policy described the pickup truck as an owned vehicle and, under Insurance Code section 11580.9, subdivision (d),[1] constituted the primary insurance. The policy limits were $10,000 for injury to or death of one person and $20,000 for injury or death arising out of one accident. An omnibus clause extended coverage to a permissive user of the pickup as an additional insured.[2]

Plaintiff was Robert Kessler's insurer. Its policy provided liability limits of $25,000 for injury to or death of one person and $50,000 for injury or death arising out of one accident. If Robert Kessler was driving the pickup truck at the time of the accident, he was covered under the provisions of plaintiff's policy, but under Insurance Code section 11580.9, subdivision (d) (see fn. 1, *ante*), plaintiff's policy constituted excess insurance.[3]

In separate suits the heirs of Ronald Eberhart and Larry Kessler instituted wrongful death actions against Barnett Kessler and the estates of Robert Kessler and Russell Kessler. As the primary insurer Farmers undertook the defense of all defendants in the wrongful death cases.

---

[1] Insurance Code section 11580.9, subdivision (d), reads in pertinent part: ". . . where *two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.*"

It appears to be the general rule throughout the United States that the insurance policy naming or describing the vehicle affords the primary coverage. (See *Powell* v. *Home Indemnity Company*, 343 F.2d 856, 858; 8 Blashfield, Automobile Law and Practice (3d ed.) § 345.13, pp. 493-494, and cases cited in fn. 40.)

[2] A true copy of the policy was received by us in evidence on appeal pursuant to rule 23 of the California Rules of Court. Its definition of "insured" reads in pertinent part: "[T]he unqualified word 'insured' includes (a) with respect to any automobile as hereinafter defined, the named insured and his relatives, (b) with respect to the described automobile, any other person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or with his permission . . . ."

[3] While plaintiff's policy was not introduced into evidence, it is asserted in respondent's brief and not denied in appellants' reply brief that plaintiff's policy expressly limited coverage as to operation of nonowned vehicles to excess liability over the limits of any other valid or collectible insurance. In view of the fact plaintiff's coverage is conclusively presumed to be excess under the statute, we do not deem it important whether the policy itself expressly so provided.

The plaintiffs in the wrongful death cases offered to settle for $3,500 in each case but those offers apparently did not find their way to defendants' file. Subsequently, however, the plaintiffs' offers to settle each case for $4,500 were rejected by defendants. Defendants offered only $1,000 in each case on a take-it-or-leave-it basis. Nor did they inform plaintiff of the settlement proposals.

The wrongful death actions were consolidated and proceeded to jury trial. At the close of the plaintiffs' opening statement, a motion for nonsuit by the estate of Russell Kessler was granted. Upon trial the jury impliedly found Robert Kessler was the driver of the pickup and rendered verdicts against his estate in the amount of $30,000 in the Eberhart case and $20,000 in the Larry Kessler case. Judgments were entered accordingly. Defendants paid $10,000 on each judgment. Plaintiff satisfied the balance of each judgment: $20,505.13 in the Eberhart case and $10,235.22 in the Larry Kessler case.

Plaintiff then instituted this action to recover the $30,740.35 it was required to pay on the judgments alleging its loss resulted from defendants' bad faith failure to accept reasonable offers of settlement within their policy limits.[4] After a nonjury trial, the court found and concluded that Robert Kessler was an insured under defendants' policy, that defendants had breached their good faith duty to accept reasonable settlement offers within their policy limits, that plaintiff's payments on the judgments in the amount of $30,740.35 were necessitated thereby, that plaintiff was not contributorily negligent in the premises, that plaintiff, as excess insurer of Robert Kessler, was subrogated to his rights under defendants' policy of insurance and that plaintiff was entitled to recover its loss from defendants. Judgment was entered accordingly, and defendants appeal.

Broadly speaking, there are two prongs to defendants' appeal. First, they contend that a permissive user's insurer may not and should not recover from the vehicle owner's insurer amounts the former has been

---

[4]Although defendants do not argue the point as error, they assert the theory of plaintiff's complaint and the trial until the time of oral argument was negligence and that only at oral argument and the settlement of the findings of fact and conclusions of law did plaintiff assert a theory of equitable subrogation. However, the complaint is entitled, "COMPLAINT BY SECONDARY INSURER AGAINST PRIMARY INSURER FOR BAD FAITH, ETC." and expressly alleges that defendants failed "[t]o accept reasonable offers of settlement . . . ." The complaint sets forth all the facts necessary to a recovery on the theory of equitable subrogation.

required to pay because of the bad faith failure of the latter to effect settlement within its policy limits. Second, they contend that, even if such recovery is permissible in a proper case, plaintiff should not have prevailed in the case at bench because defendants did not unreasonably refuse to settle and because plaintiff itself was guilty of inequitable or contributorily negligent conduct.

We turn first to the question whether plaintiff's recovery is legally permissible. Apparently no California appellate court has passed on the question. Courts in other jurisdictions, however, have approved recovery by an excess insurer against the primary insurer for bad faith failure to settle. (*Valentine* v. *Aetna Ins. Co.*, 564 F.2d 292; *Peter* v. *Travelers Insurance Company*, 375 F.Supp. 1347; *Estate of Penn* v. *Amalgamated General Agencies* (1977) 148 N.J.Super. 419 [372 A.2d 1124]; *American Fidelity & Cas. Co.* v. *All American Bus Lines*, 190 F.2d 234; *American Fidelity & Cas. Co.* v. *All American Bus Lines*, 179 F.2d 7; see *Continental Casualty Co.* v. *Reserve Ins. Co.* (1976) 307 Minn.2d 5 [238 N.W.2d 862]; cf. *Home Insurance Co.* v. *Royal Indemnity Co.*, 68 Misc.2d 737 [327 N.Y.S.2d 745].) The legal theory upon which recovery has been allowed is that upon payment of the insured's liability to the injured claimant, the excess insurer is equitably subrogated to the rights of the insured against the primary insurer, including his right of action for bad faith failure to settle. (E.g., *Valentine* v. *Aetna Ins. Co., supra,* 564 F.2d at pp. 296-297; *Peter* v. *Travelers Insurance Company, supra,* 375 F.Supp. at pp. 1349-1350. The doctrine of equitable subrogation is, of course, well recognized in California (see, e.g., *Offer* v. *Superior Court,* 194 Cal. 114, 118 [228 P. 11]; *Meyers* v. *Bank of America etc. Assn.,* 11 Cal.2d 92 [77 P.2d 1084]; *Patent Scaffolding Co.* v. *William Simpson Constr. Co.,* 256 Cal.App.2d 506, 509-510 [64 Cal.Rptr. 187], and numerous cases there cited; 7 Witkin, Summary of Cal. Law (8th ed.) Equity, § 124 et seq., p. 5342 et seq.; 3 Witkin, Cal. Procedure (2d ed.) Pleading, § 101, pp. 1776-1777) and has been applied between insurers in other circumstances (see *Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27, 37 [17 Cal.Rptr. 12, 366 P.2d 455]; *Aetna Cas. & Surety Co.* v. *Certain Underwriters,* 56 Cal.App.3d 791, 801 [129 Cal.Rptr. 47]; *Fireman's etc. Co.* v. *State Comp. etc. Fund,* 93 Cal.App.2d 408, 412-413 [209 P.2d 55]).

Defendants point out that it is a prerequisite to equitable subrogation that the subrogor (estate of Robert Kessler) had an assignable right of action against the obligor (defendants). (*Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d at p. 509.) They

contend that the estate of Robert Kessler, to whose rights plaintiff claims to be subrogated, had no right of action against defendants for bad faith failure to settle.

█ It is well established in this jurisdiction that a liability insurer owes its insured a duty to effect reasonable settlement of a claim against the insured within its policy limits when there is a substantial likelihood of recovery in excess of those limits and that upon breach of that duty by the insurer, the insured has a right of action against the insurer for damages proximately caused thereby. (*Murphy* v. *Allstate Ins. Co.*, 17 Cal.3d 937, 940-942 [132 Cal.Rptr. 424, 553 P.2d 584]; *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau*, 15 Cal.3d 9, 14-15 [123 Cal.Rptr. 288, 538 P.2d 744]; *Crisci* v. *Security Ins. Co.*, 66 Cal.2d 425, 429, 432 [58 Cal.Rptr. 13, 426 P.2d 173]; *Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 658-661 [328 P.2d 198, 68 A.L.R.2d 883].) The insured's cause of action is assignable. (*Murphy* v. *Allstate Ins. Co., supra*, 17 Cal.3d at p. 942; *Comunale* v. *Traders & General Ins. Co., supra*, 50 Cal.2d at pp. 661-662; see *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra*, 15 Cal.3d at p. 12.)

The estate of Robert Kessler was, of course, an insured under the omnibus clause in defendants' policy. (See fn. 2, *ante.*) Defendants argue, nevertheless, that the duty to effect settlement within policy limits arises out of the contractual relationship between the insurer and the insured, that Robert Kessler did not contract with defendants for insurance and paid defendants no premium for insurance coverage and that, therefore, no duty to effect settlement within policy limits extended to him or his estate. As defendants correctly point out, the decisions from other jurisdictions previously cited are of no assistance in resolving this issue because in each of them it appears the insured was the named insured in the policies of both the primary and excess insurers.

It is true, of course, that the insurer's duty to the insured to effect reasonable settlement arises out of the contractual relationship between the parties, specifically the covenant of good faith and fair dealing implicit in the policy of insurance. (*Murphy* v. *Allstate Ins. Co., supra*, 17 Cal.3d at pp. 940-941; *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra*, 15 Cal.3d at p. 18; *Crisci* v. *Security Ins. Co., supra*, 66 Cal.2d at p. 430; *Comunale* v. *Traders & General Ins. Co., supra*, 50 Cal.2d at pp. 658-659.) We think it is also correct to say that Robert Kessler was not a contracting party. (Cf. *Murphy* v. *Allstate Ins. Co.*,

*supra,* 17 Cal.3d at p. 944.) That is not to say, however, that he was not a party to the contract. ■ As a permissive user he was an insured under the terms of the policy. At the very least, as one of a class for whose benefit the policy was expressly made, he was an express third party beneficiary. (Civ. Code, § 1559; *Johnson* v. *Holmes Tuttle Lincoln-Merc.,* 160 Cal.App.2d 290, 297 [352 P.2d 193]; *Ericson* v. *Hill* (1964) 109 Ga.App. 759 [137 S.E.2d 374, 376].) ■ A third party beneficiary may, of course, enforce a contract expressly made for his benefit. (Civ. Code, § 1559; *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at p. 943.) And, in appropriate cases, the right of a third party beneficiary to enforce the contract extends to implied covenants. (*Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 242, 244-245 [73 P.2d 1163].)

The right of a third party beneficiary of a liability insurance policy to enforce the implied covenant of good faith and fair dealing and the insurer's duty to effect reasonable settlement was recently considered in *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d 937. The plaintiff in that case was the injured claimant who had reduced her claim to judgment and was a third party beneficiary by virtue of Insurance Code section 11580, subdivision (b)(2), authorizing direct action against the insurance company by a judgment creditor. Affirming a judgment for the defendant, the court held an injured claimant may not enforce the insurer's duty to effect reasonable settlement arising out of the implied covenant of good faith and fair dealing because it was intended to benefit the insured, not the injured claimant. The court explained: "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. . . . As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler. . . . Because . . . the duty to settle is intended to benefit the insured and not the injured claimant, third party beneficiary doctrine does not furnish a basis for the latter to recover." (17 Cal.3d at p. 944.)

*Murphy* is not controlling, of course, since the third party beneficiary here is not the injured claimant but an additional insured. As we shall see, the distinction is crucial. Nevertheless, the decision in *Murphy* is instructive. The court expressly recognized that a third party beneficiary may enforce those promises made for his benefit (17 Cal.3d at p. 943) and it is implicit in the court's opinion that a third party beneficiary might enforce the insurer's duty to effect reasonable settlement arising out of the implied covenant of good faith and fair dealing if it were for

his benefit. As to the injured claimant, the court pointed out: "The insurer's duty to settle does not directly benefit the injured claimant. In fact, he usually benefits from the duty's breach. Instead of receiving an award near policy limits, he stands to obtain judgment exceeding policy coverage. . . ." (17 Cal.3d at p. 941.) "The duty to settle is implied in law to protect the *insured* from exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose. (See *Shapero* v. *Allstate Ins. Co.* (1971) 14 Cal.App.3d 433 [92 Cal.Rptr. 244].)" (*Id.*) (Italics added.)

Implicit in the quoted language, the court's citation of *Shapero* v. *Allstate Ins. Co.* and its conclusion that the insurer's duty to effect reasonable settlement was not intended for the benefit of the injured claimant but rather for the benefit of the insured is the recognition that the insurer's duty to settle stems from the relationship between the insurer and the insured under the policy. The fundamental promise of the insurer is to pay all damages for which the insured becomes legally obligated up to the policy limits. The insurer is entitled to control defense of any action, including settlement negotiations.[5] When there is a likelihood liability may exceed policy limits and there is an opportunity for settlement within policy limits the interests of the insurer will be in conflict with those of the insured. The duty to effect reasonable settlement is imposed on the insurer to compel it to give as much consideration to the interests of the insured as it does to its own. (See *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at pp. 659-660; *Shapero* v. *Allstate Ins. Co., supra,* 14 Cal.App.3d at pp. 437-438; *Ivy* v. *Pacific Automobile Ins. Co.,* 156 Cal.App.2d 652, 659-660 [320 P.2d 140]; *Brown* v. *Guarantee Ins. Co.,* 155 Cal.App.2d 679, 684-687 [319 P.2d 69].)

As between the insurer and the injured claimant this matrix is entirely absent. There is no promise from the insurer to discharge any liability of the injured claimant; the insurer does not control litigation and settlement negotiations insofar as the injured claimant is concerned; the insurer does not represent the injured claimant and there is no occasion for any conflict of interests.

█ By contrast, once an omnibus insured invokes the policy's coverage, he is bound by the terms of the policy including those giving the insurer the right to control litigation and settlement (*Ericson* v. *Hill,*

---

[5] The insurer may not, of course, avoid the duty to settle by wrongfully refusing to defend. (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 660.)

*supra,* 137 S.E.2d at p. 376), and the relationship between him and the insurer is the same as that between the insurer and the named insured. The insurer is obligated to pay the liability of the omnibus insured up to the policy limits; the insurer has the right to control litigation and settlement negotiations; and if there is a likelihood the omnibus insured's liability will exceed the policy limits, the interests of the omnibus insured and the insurer will be in conflict.

■ Thus, unlike an injured claimant, an omnibus insured will directly benefit from performance of the insurer's duty to effect reasonable settlement within its policy limits to the same extent as the named insured, and we conclude that performance of the insurer's duty to settle was intended for the benefit of an omnibus insured and is enforceable by him. ■ If performance of a contractual promise "necessarily require[s] the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract." (*Johnson* v. *Holmes Tuttle Lincoln-Merc., supra,* 160 Cal.App.2d at p. 297.)

■ It is of no consequence that Robert Kessler or his estate paid no premium to defendants for insurance coverage. The named insured paid the premium which, presumably, was based on all risks undertaken by defendant, including omnibus coverage, and, indeed, contemplated defendants' duty to act in good faith in settling claims within its policy limits (see *Peter* v. *Travelers Insurance Company, supra,* 375 F.Supp. at p. 1350; *Estate of Penn* v. *Amalgamated General Agencies, supra,* 372 A.2d at p. 1126). ■ It is fundamental that the right of a third party beneficiary to enforce a promise made for his benefit does not depend on his having given consideration therefor. (See, e.g., *Pitzer* v. *Wedel,* 73 Cal.App.2d 86, 90-91 [165 P.2d 971]; *Sherwood & Sherwood* v. *Gill & Lutz,* 36 Cal.App. 707, 711 [173 P. 171].)

Defendants also argue that the estate of Robert Kessler had no right of action against them for bad faith refusal to settle because there was no judgment against the estate in excess of all applicable insurance and the estate was never threatened with or suffered any loss. ■ It is not a prerequisite to equitable subrogation that the subrogor suffered actual loss; it is required only that he would have suffered loss had the subrogee not discharged the liability or paid the loss. Thus it is that *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d at pages 35-38, *Aetna Cas. &*

*Surety Co.* v. *Certain Underwriters, supra,* 56 Cal.App.3d at page 801, *Valentine* v. *Aetna Ins. Co., supra,* 564 F.2d at page 296-297, and *Peter* v. *Travelers Insurance Company, supra,* 375 F.Supp. at pages 1349-1350, all permitted recovery by one insurance carrier against another on a theory of equitable subrogation without any showing that the insured had suffered any loss.

We conclude that equitable subrogation is not precluded on the basis urged. ▇ We turn to defendants' arguments that, nevertheless, recovery by an excess insurer against the primary insurer for bad faith refusal to settle should not be permitted. Here, the decisions from other jurisdictions approving such recovery are pertinent. The rationale supporting recovery is well exemplified in the following excerpts from several of the leading cases.

"An insurance company's duty to act in good faith in settling claims within its policy limits is well established and is reflected in its premiums. That an excess insurer may recover from the primary for a breach of duty does not increase the duty or the liability of the primary. Under the doctrine of equitable subrogation, the duty owed an excess insurer is identical to that owed the insured. The excess will not be able to force the primary into accepting any settlement which his duty to the insured would not require accepting. . . . [¶] . . . If the primary carrier is relieved of its duty to accept reasonable offers by the existence of excess insurance, it would put an additional financial liability on the excess carrier which would be reflected in increased premiums. It would also have the effect of reducing the incentive of a primary insurer to settle when the settlement offer is near or over its policy limits. This is contrary to the interests of the public and the insured in obtaining prompt and just settlement of claims. . . ." (*Peter* v. *Travelers Insurance Company, supra,* 375 F.Supp. at pp. 1350-1351.)

"This result [recovery] is supported by important policy considerations underlying our judicial and liability insurance systems. First, when a primary insurer breaches its good-faith duty to settle within policy limits, it imperils the public and judicial interests in fair and reasonable settlement of lawsuits. . . . A primary insurer should not be permitted to obstruct in bad faith the important settlement process. [¶] Second, a contrary result . . . would permit an unfair distribution of losses among insurers. The insured has paid for two distinct types of coverage, undoubtedly at different rates because they involve different amounts

and kinds of risks. . . ." (*Continental Casualty Co.* v. *Reserve Ins. Co., supra,* 238 N.W.2d at pp. 864-865, fns. omitted; accord: *Valentine* v. *Aetna Ins. Co., supra,* 564 F.2d at p. 297.)

Defendants find more persuasive a decision disallowing recovery, *Universal Under. Ins. Co.* v. *Dairyland Mut. Ins. Co.* (1967) 102 Ariz. 518 [433 P.2d 966] which was followed in *Rocky Mountain Fire & Cas. Co.* v. *Dairyland Insurance Co.,* 452 F.2d 603. We do not. The entire rationale of the *Universal* decision is found in the following quotation: "Without doubt Dairyland owed good faith to its insured, which may or may not have been here exercised, a question we find unnecessary to answer. There is no privy [*sic*] of contract between these two insurance companies nor is there any principle of law of which we are aware that would give Universal such a windfall because of Dairyland's mistreatment of its assured. The principle applicable is that, where two companies insure the same risk and one is compelled to pay the loss, it is entitled to contribution from the other." (433 P.2d at p. 968.) In the *Rocky Mountain* case the federal court was required to apply Arizona law and although it characterized the language in *Universal* as dicta, it nevertheless found that decision of the Arizona Supreme Court to be controlling, stating: "A federal court exercising diversity jurisdiction is bound to follow the considered dicta as well as the holdings of state court decisions." (452 F.2d at pp. 603-604.)

Thus, it is seen that the court in the *Rocky Mountain* case gave no independent consideration to the problem but simply followed *Universal.* The court in *Universal* gave no consideration to the doctrine of equitable subrogation and did not even mention the cases allowing recovery. Its observation that there was no privity of contract between the two insurance companies is, as we shall see, inconsequential. In contrast, the *Valentine, Peter* and *Estate of Penn* decisions expose the underlying problems and values and appear to us to be well considered. While we have concluded, as will subsequently appear, that the court's discussion of the problem in the *Continental Casualty* case was unnecessary to the decision, its analysis of the problem was nevertheless excellent. Both the *Valentine* and *Peter* decisions, of course, purport to be based on California law.

Defendants attempt to distinguish the cases approving recovery on the ground that in each of those cases there was a "true" primary-excess insurance relationship, that is, one insured covered by several policies

one of which expressly afforded primary coverage and the other or others of which expressly afforded excess coverage only. In the case at bench, defendants point out, each policy was intended at inception to provide primary insurance to the insured named in the policy, the named insureds in the two policies were different persons, and each insurer owed to its own insured the duty to effect reasonable settlement. The significance of the distinction, defendants urge, is twofold. First, in the "true" primary-excess relationship, the several policies have been issued at premium rates which recognize the difference in exposure and it is reasonable that a "true" excess insurer be permitted to rely on the primary insurer; whereas, in the situation here presented, each insurer was a primary insurer and it is not reasonable to permit one to place the entire burden on the other. Secondly, in a situation such as is presented in the case at bench, each insurer owes its own insured a duty to effect reasonable settlement, and the excess insurer should not be relieved of its duty to its own insured lest reasonable settlements be deterred.

It is true that in all the cases cited as permitting recovery by an excess insurer against the primary insurer for bad faith failure to effect reasonable settlement, there was the "true" primary-excess insurance relationship described by defendants. We cannot agree, however, that the distinction dictates a result contrary to that reached in the cited cases.

At first blush, the suggestion that the premium rates at which the policies in the present case were issued took no account of a primary-excess insurance relationship might appear correct. Upon closer analysis, it is seen not to be. The fact is that, under existing law, both plaintiff and defendants knew their respective policies would constitute primary coverage in some cases and excess coverage in others. For example, had Barnett Kessler been driving the vehicle described in Robert Kessler's policy and been involved in the same accident, plaintiff's policy would constitute the primary insurance and defendants' coverage would be excess. It is presumed that insurance rates are determined in the light of the applicable law concerning coverage. (*Pacific Indemnity Co.* v. *Liberty Mutual Ins. Co.,* 239 Cal.App.2d 346, 352 [48 Cal.Rptr. 667].) Presumably, therefore, the premium rates at which the policies here involved were issued did take account of all potential primary-excess insurance relationships which might materialize.

Similarly, defendants' arguments based on the duty of an excess carrier to its own insured to effect reasonable settlement does not

withstand analysis. In the first place, the assertion that each carrier owes that duty to its own insured overlooks a significant fact. Plaintiff's insured was also an insured of defendants. While the estate of Robert Kessler was not named as an insured in defendants' policy, it was an additional insured under the policy's express terms, and as we have determined, defendants' duty to settle extended not only to Barnett Kessler but also to the estate of Robert Kessler. Secondly, defendants appear to misconceive the extent of an excess insurer's duty to settle. Its duty requires no more than that it effect reasonable settlement within its own policy limits.[6] Permitting an excess insurer to recover from the primary insurer for its unreasonable failure to settle within *its* policy limits, in no way reduces or diminishes the duty of the excess insurer to settle within the limits of its own policy. Neither does it in any way discourage settlements. However, denying recovery, that is, relieving a primary insurer of its duty to effect reasonable settlement where excess coverage exists, would tend to deter settlements. (*Valentine* v. *Aetna Ins. Co., supra,* 564 F.2d at pp. 297-298; *Peter* v. *Travelers Insurance Company, supra,* 375 F.Supp. at pp. 1350-1351; *Estate of Penn* v. *Amalgamated General Agencies, supra,* 372 A.2d at pp. 1126-1127; see *Continental Casualty Co.* v. *Reserve Ins. Co., supra,* 238 N.W.2d at pp. 864-865.) It would give the primary insurer a disincentive to settle, particularly when the proposed settlement was near, at or in excess of primary's policy limits. This may be illustrated by assuming a case in which the primary policy limit is $20,000, the excess policy limit is $50,000, the reasonable settlement offer is $18,000, liability is likely but not certain, and the damages are such that, if recovery is had, it will likely be in an amount well in excess of the primary policy limit. In such a situation, if the primary insurer is not faced with the possibility of liability for bad faith failure to effect settlement, it will have at risk only $2,000 if it refuses to settle for $18,000 and proceeds to trial on the possibility of a favorable judgment. If the reasonable settlement offer were $20,000, it would risk nothing at all by going to trial.

Next, defendants assert that where an excess insurer steps in, settles and pays the insured's liability and then sues the primary for reimbursement, the excess insurer can recover from the primary insurer no more than the primary's policy limits. Then they argue that an excess insurer which lies back and makes no attempt to settle should not be in a better position than a settling excess insurer.

---

[6]We need not here determine whether its duty might be only to settle for an amount equal to its own policy limits plus the amount of the primary coverage.

Defendants' argument would be entitled to considerable weight if the assertion on which it rests were sound. However, the assertion that a settling excess insurer cannot recover in excess of policy limits from a primary insurer guilty of bad faith refusal to settle is not well founded. Defendants rely on *Westerholm v. 20th Century Ins. Co.,* 58 Cal.App.3d 628 [130 Cal.Rptr. 164]; *Pacific Indemnity Co. v. Liberty Mutual Ins. Co., supra,* 239 Cal.App.2d 346; and *Continental Casualty Co. v. Reserve Ins. Co., supra,* 238 N.W.2d 862. It is true that in all three cases the insurer known or later determined to be the excess insurer effected settlement, sued the primary insurer and recovered only the amount of the primary's policy limits. These are not bad faith cases, however. None of them involved any bad faith refusal of the primary insurer to effect settlement within its policy limits resulting in a loss to the excess insurer in an amount more than the primary policy limits it would not otherwise have had. On the contrary, in each case the settlement effected by the excess insurer was in an amount greatly in excess of the policy limit of the primary insurer. There was no indication that the injured claimant had ever offered to settle within the policy limits of the primary insurer. The only default of the primary insurer was the refusal to contribute its policy limits to the settlement arranged by the excess insurer, and the only injury suffered by the excess insurer was the loss of the primary insurer's contribution of its policy limits. Accordingly, in each case the excess insurer sought no recovery in excess of the primary insurer's policy limits, and none was awarded. The courts in the *Westerholm* and *Pacific Indemnity* cases correctly recognized that bad faith doctrine was not involved, for those decisions contain no mention of that theory. The discussion of the right of an excess insurer to recover from the primary insurer for bad faith refusal to settle found in *Continental Casualty,* while excellent, was inappropriate. As the *Westerholm* and *Pacific Indemnity* cases demonstrate, the excess insurer in *Continental Casualty* was entitled to recover the amount of the primary insurer's policy limit without any showing that the primary insurer unreasonably failed to settle within the limits of its own policy. All it needed to show was that its coverage was excess, the coverage of the defendant company was primary, and the settlement it arranged was reasonable and in an amount in excess of the primary's policy limit. (*Westerholm v. 20th Century Ins. Co., supra,* 58 Cal.App.3d 628; *Pacific Indemnity Co. v. Liberty Mutual Ins. Co., supra,* 239 Cal.App.2d 346.)

It is settled that recoverable damages for the failure of an insurer to effect reasonable settlement within its policy limits includes the entire

amount of the insured's liability to the injured claimant, even though that amount be in excess of the insurer's policy limits. (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at pp. 658-661; accord: *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at p. 941; *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d at p. 15; *Cain* v. *State Farm Mut. Auto. Ins. Co.,* 47 Cal.App.3d 783, 791 [121 Cal.Rptr. 200].) And we entertain no doubt that an excess insurer which has settled and discharged the insured's liability may recover from the primary insurer an amount in excess of the primary insurer's policy limits if the excess insurer can prove the primary insurer's unreasonable refusal to settle within its policy limits resulted in loss to the excess insurer in an amount in excess of the policy limits of the primary insurer it would not otherwise have had.

 Next, defendants argue the absence of any contractual relationship between plaintiff and them should preclude recovery on a bad faith theory, since, as previously acknowledged, the duty to settle is based upon the covenant of good faith and fair dealing implicit in every contract. This argument ignores equitable subrogation. Under that doctrine, it is the duty of the insurer to the insured that is enforced, not an independent duty to the excess insurer. As observed in *Offer* v. *Superior Court, supra,* 194 Cal. at p. 118: "This right of the insurer against the wrongdoer does not rest upon any relation of contract or of privity between them, but arises out of the nature of the contract of insurance as a contract of indemnity." (Accord: *Automobile Ins. Co.* v. *Union Oil Co.,* 85 Cal.App.2d 302, 305 [193 P.2d 48].)

Defendants assert that the duty of an insurer to effect reasonable settlement originated for the benefit and protection of unsophisticated insureds, not for another, equally sophisticated insurer and argue the duty ought not to be extended to benefit the latter. We believe defendants' assertion is true (see *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at p. 941; *Shapero* v. *Allstate Ins. Co., supra,* 14 Cal.App.3d 433) but it does not lead us to the conclusion urged. As has been demonstrated, in addition to protecting the insured, the rule imposing liability on an insurer for failure to effect reasonable settlement within its policy limits serves the important public policy of encouraging settlement of legal controversies. Thus, enforcement of the primary insurer's duty to settle in good faith by equitably subrogating the excess insurer to the rights of the insured is fully warranted by public policy notwithstanding imposi-

tion of the duty may have been primarily for the benefit of the insured in the first instance.

Finally, under this head, defendants contend it is the policy of the State of California that where multiple coverage exists, each insurer should bear only its own share of the loss not in excess of its policy limits.

First, reliance is placed on Insurance Code sections 11580.8 and 11580.9. Section 11580.9 sets forth the rules for determining primary, secondary and excess coverage in various situations in which more than one policy applies. Subdivision (d) quoted in footnote 1, *ante,* sets forth the rule applicable to the two insurance policies in this case. Section 11580.8 reads in relevant part: "The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage . . . . [¶] The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply. . . ."

■ Section 11580.9 does not in any way attempt to deal with the problem of an insurer's failure to effect reasonable settlement and the attendant rights and liabilities of the several insurers in such events. It purports merely to establish clear and fixed rules for determining the *order* in which the several policies apply in the enumerated situations. Section 11580.8 declares the public policy of avoiding litigation in insurance coverage disputes. Once it is established and is known, a rule permitting an excess insurer to enforce the duty of a primary insurer to effect reasonable settlement will not be in any way inconsistent with the announced policy. On the contrary, it will promote that policy by encouraging settlement of underlying injury claims.

Next, defendants cite *Westerholm* v. *20th Century Ins. Co., supra,* 58 Cal.App.3d 628; *Aetna Cas. & Surety Co.* v. *Certain Underwriters, supra,* 56 Cal.App.3d 791; *Mid-Century Ins. Co.* v. *Hernandez,* 275 Cal.App.2d 839 [80 Cal.Rptr. 448]; *Pacific Indemnity Co.* v. *Liberty Mutual Ins. Co., supra,* 239 Cal.App.2d 346; and *Bohrn* v. *State Farm etc. Ins. Co.,* 226 Cal.App.2d 497 [38 Cal.Rptr. 77].

As we have already observed, *Westerholm* involved no bad faith claim and no discussion of bad faith refusal to settle. One insurer cross-complained against another to determine which insurer was primary and which was excess. Upon determination of that question, the excess insurer, which had settled and discharged the insured's liability for an amount in excess of the primary insurer's policy limits, was held entitled to recover from the primary insurer its policy limits, the only damage suffered by and the only recovery sought by the excess insurer.

*Bohrn, Pacific Indemnity* and *Mid-Century* all involved disputes between several insurers concerning the order in which their policies applied, if they were applicable, and the amount of their respective liabilities. No claim for bad faith refusal to settle or for liability in excess of policy limits was made, nor was there any discussion of bad faith in any of these cases. In both *Bohrn* (226 Cal.App.2d at p. 506) and *Pacific Indemnity* (239 Cal.App.2d at p. 353) is found the language that ". . . an individual insurance carrier would only be made to pay his fair share of the burden in dual insurance situations." The quoted language, however, was not used in describing or announcing any public policy. In each case it was merely part of a sentence by which the court was attempting to indicate that a rule of law set down by the California Supreme Court in *American Automobile Ins. Co. v. Republic Indemnity Co.,* 52 Cal.2d 507 [341 P.2d 675] was not inequitable.

*Aetna Cas. & Surety Co. v. Certain Underwriters* was a dispute between several insurers as to whether the excess insurers were required to assume defense of the insured after the primary insurer had paid claims exhausting its policy limits. It was held that the excess insurers were required to defend and the primary insurer was entitled to recover from the excess insurers on the theory of equitable subrogation the amounts expended by the primary in providing defense after exhaustion of its policy limits. Except for the application of the doctrine of equitable subrogation, there is nothing in the case bearing on the propriety of an excess insurer's recovery from a primary insurer for bad faith failure to settle. No bad faith problem was involved or discussed. The only defalcation there involved was the failure of the excess insurers to undertake defense of the insured after the primary insurer's policy limits were exhausted. A failure to defend without more does not ordinarily give rise to liability in excess of policy limits except for attorney fees and costs. (*Comunale* v. *Traders & General Ins. Co., supra,*

50 Cal.2d at p. 659; see *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d at pp. 18-19.)

We perceive no public policy contraindicative of plaintiff's recovery from defendants for their bad faith failure to settle. On the contrary, plaintiff's recovery appears to be sound in legal principle and supported by significant public policy considerations.

We come at last to defendants' contentions the judgment should be reversed because defendants were not guilty of bad faith failure to settle and because plaintiff's conduct was inequitable or contributorily negligent. The trial court found against defendants on both issues,[7] and defendants' contentions present only the question whether the trial court's findings are supported by substantial evidence.

■ The weight to be given the evidence is, of course, a matter committed exclusively to the trial court. When a finding of the trial court is attacked as being unsupported by the evidence, the power of the appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Wittenbach* v. *Ryan,* 63 Cal.App.3d 712, 716 [134 Cal.Rptr. 47].) Where the evidence is conflicting or gives rise to conflicting inferences the findings of the trial court will not be disturbed on appeal. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

■ Whether defendants were guilty of bad faith failure to settle within their policy limits was, of course, a question of fact. (*Cain* v. *State Farm Mut. Auto. Ins. Co., supra,* 47 Cal.App.3d at p. 792; *Marsango* v. *Automobile Club of So. Cal.,* 1 Cal.App.3d 688, 696 [82 Cal.Rptr. 92].) ■ The exercise of good faith requires the insurer to give to the interests of the insured at least as much consideration as it does to its own. (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 429; *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 659.) "In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer." (*Crisci* v. *Security Ins. Co., supra.*)

---

[7]The parties properly interpret the trial court's finding that plaintiff was not contributorily negligent as including a finding that plaintiff's conduct was not inequitable.

 There was abundant evidence from which the trial court could reasonably conclude that a prudent insurer without policy limits would have accepted the proposal to settle both wrongful death cases for $9,000, well within defendants' policy limit of $20,000. Defendants rejected this proposal and made an offer of only $1,000 in each case on a take-it-or-leave-it basis. The resulting judgments totaled $50,000. "The size of the judgment recovered . . . when it exceeds the policy limits, although not conclusive, furnishes an inference that . . . acceptance of an offer within those limits was the most reasonable method of dealing with the claim." (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 431; *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d at p. 17.) The inference is confirmed by other evidence. Defendants, of course, urge that it was unknown which occupant of the pickup truck was driving, that there was credible evidence to indicate Robert Kessler was not driving, and that a defense verdict was likely if anyone else was driving. There was ample evidence, however, of which defendants were well aware, indicating that Robert Kessler was the driver. In fact, defendants' attorneys reported to them that Robert Kessler appeared to be the driver. They were also advised by their attorney that in the event plaintiffs recovered judgments, the amount in each case could easily exceed $10,000.

Defendants' contention plaintiff's conduct was inequitable fares no better. Inequitable conduct on the part of plaintiff would, it is true, be a consideration pertinent to equitable subrogation. (See *Offer* v. *Superior Court, supra,* 194 Cal. at p. 118; *Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d at p. 509.) Again, however, substantial evidence supports the trial court's determination that plaintiff's conduct was not inequitable.

Defendants' contention is based primarily on evidence that, at an early stage of the case, plaintiff employed investigators on its own, knew there was evidence that Robert Kessler was the driver of the pickup, determined for itself that liability might exceed $20,000 and even considered engaging an attorney to represent its interests. Under these circumstances, defendants contend plaintiff should have stayed abreast of developments in the case, engaged in settlement negotiations and effected settlement itself.

We are not at all certain an excess insurer has the right to step in and effect a settlement on behalf of its insured within the policy limits of the

primary insurer notwithstanding that its insured is also an additional insured under the primary policy and the primary insurer has undertaken representation and defense of the insured. In the only cases called to our attention in which the excess insurer effected the settlement, the settlement made was in excess of the primary insurer's policy limits (see *Westerholm* v. *20th Century Ins. Co., supra,* 58 Cal.App.3d 628; *Pacific Indemnity Co.* v. *Liberty Mutual Ins. Co., supra,* 239 Cal.App.2d 346; *Continental Casualty Co.* v. *Reserve Ins. Co., supra,* 238 N.W.2d 862) and in both the *Pacific Indemnity* and *Continental Casualty* cases the excess insurer had assumed defense of the injury litigation.

In any event, however, the trial court was not compelled by the evidence to find plaintiff's conduct inequitable. There was evidence that defendants did not notify plaintiff of the settlement offers made by the plaintiffs in the wrongful death cases nor of its own action in response thereto. Much of the very evidence relied on by defendants to support their argument their rejection of the $9,000 settlement proposal did not constitute bad faith and, indeed, that argument itself, supports the finding that plaintiff's conduct was not inequitable. There was, as defendants themselves have pointed out, credible evidence indicating Robert Kessler was not the driver of the pickup at the time of the accident. If he was not, whereas defendants might still be liable, plaintiff could have no liability at all, for its policy was inapplicable unless Robert Kessler was liable. Most importantly, as we have already observed, plaintiff's duty to its insured required no more than that it settle within its own policy limit of $50,000. While there was evidence that plaintiff had information liability might exceed defendants' policy limits, there was no evidence whatever that plaintiff had any information indicating the slightest likelihood that liability might exceed $50,000. Indeed, except for interest and costs, the judgments ultimately rendered did not exceed plaintiff's policy limits.

No error appears. The judgment is affirmed.

Gardner, P. J., and Morris, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 23, 1978.