42 F.3d 1398
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CHEMSTAR, INC., Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellant,
and
Genstar Corporation; National Union Fire Insurance Company
of Pittsburgh, PA.; Industrial Insurance Company of Hawaii,
Ltd.; American Home Assurance Company; Employers Insurance
of Wausau, Defendants.
 No. 92-55472.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1994.
Decided Nov. 16, 1994.
 
 Before: O'SCANNLAIN, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In this appeal of Phase I of this case, Liberty Mutual Insurance Company ("Liberty") argues that the district court erred in granting summary judgment in favor of Chemstar, Inc., ("Chemstar") on the issues of Liberty's duty to defend and the sufficiency of the evidence in support of the jury's finding that Liberty acted in bad faith when it breached this duty. Liberty also contests the award of compensatory and punitive damages.[1]
 
 
 3
 * Liberty argues that the district court erred in holding that Liberty had no duty to defend because the policy covered only Genstar Lime Company, Inc. ("GLC"), the company Chemstar purchased. Our review of the record, however, discloses substantial evidence supporting the district court's conclusion that the policy transferred to Chemstar with the purchase. The stock purchase agreement between Chemstar and GLC's former owner, Genstar Lime, transferred all of GLC's assets, including insurance contracts, to Chemstar. Therefore, we hold that Chemstar was entitled to a defense under GLC's policy.[2]
 
 II
 
 4
 Liberty argues that even if Chemstar could claim benefits under GLC's policy, Liberty had no duty to defend suits based on claims filed after December 5, 1986, the date Chemstar terminated Liberty's coverage.
 
 
 5
 "An insurer ... bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." Gray v. Zurich Ins. Co., 419 P.2d 168, 177 (Cal.1966). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." Horace Mann Ins. Co. v. Barbara B., 846 P.2d 792, 795 (Cal.1993). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." Id. at 796.
 
 
 6
 In Montrose Chemical Corp. of California v. Superior Court, 861 P.2d 1153 (Cal.1993), the California Supreme Court explained the burdens on the parties seeking summary judgment of the duty to defend issue:
 
 
 7
 To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.
 
 
 8
 Id. at 1161 (emphasis in original).
 
 
 9
 The district court was correct in concluding that Chemstar had shown a potential for coverage and that Liberty had not established the absence of any such potential. California law is unclear as to (1) what constitutes the occurrence that gives rise to property damage and (2) when property damage occurs such that it triggers coverage in a particular policy period. Under various theories adopted by California courts, policy coverage can be triggered when property is exposed to the cause of the damage, when damage in fact happens, or when damage manifests itself.[3] Thus, depending on the legal interpretation, the policy may or may not have covered all the pitting claims.
 
 
 10
 Liberty contends that it did not have a duty to defend because the potential for liability rested on a disputed legal question. In State Farm Mutual Automobile Insurance Co. v. Longden, 242 Cal.Rptr. 726, 731 (Cal.App.1987), a California appellate court held that a potential for liability arising from a disputed legal question did not impose upon the insurer a duty to defend.
 
 
 11
 We decline to follow Longden.[4] The California Supreme Court in Gray explained that the duty to defend "includes only defense to those actions of the nature and kind covered by the policy." 419 P.2d at 175. Here, the Liberty policy covered property damage to third parties caused by GLC. The facts before the district court indicated that the plaster pitting suits were the type of claims for which Chemstar could reasonably expect protection under its property damage policy. See Hanson v. Prudential Ins. Co. of Am., 783 F.2d 762, 765 (9th Cir.1985) ("[T]he insurance contract must be considered in light of the reasonable expectations of the insured at the time he purchased coverage."). Nowhere in Gray did the California Supreme Court suggest that disputed legal questions could not give rise to the potential of liability.
 
 
 12
 Finally, Liberty argues in its reply brief that under the district court's July 1992 decision on Phase II, Liberty had no duty to defend because it had exhausted its $2 million policy limit. We reject this argument. Liberty cannot use a later decision on coverage to dispute the district court's earlier decision on duty to defend. Horace Mann, 846 P.2d at 795.
 
 III
 
 13
 Liberty argues that the district court erred in bifurcating the duty to defend and bad faith issues and the indemnity issues.
 
 
 14
 Federal Rule of Civil Procedure 42(b) allows a district court to order a separate trial of any claim or issue "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." We have upheld a bifurcation order when it "simplified the issues for the jury" and reduced "the danger of unnecessary jury confusion." Hirst v. Gertzen, 676 F.2d 1252, 1261 (9th Cir.1982). Alternatively, we have reversed such an order when the bifurcated issues were so intertwined that their separation would "tend to create confusion and uncertainty." Miller v. Fairchild Ind., Inc., 885 F.2d 498, 511 (9th Cir.1989) (quotation omitted), cert. denied, 110 S.Ct. 1524 (1990).
 
 
 15
 Here, bifurcation greatly helped simplify a legally complicated and issue-intensive case and did not separate intertwined issues so as to create confusion and uncertainty. We hold that the district court did not abuse its discretion in ordering bifurcation.
 
 
 16
 Liberty further maintains that bifurcation prevented it from submitting evidence showing that its policy did not cover the Friedman claim. This argument has no merit. Because Liberty potentially had the duty to indemnify, evidence suggesting that there was no coverage was irrelevant. Montrose, 861 P.2d at 1161 ("Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, ... add no weight to the scales.").
 
 IV
 
 17
 Liberty challenges the jury's verdict that Liberty breached the policy's implied covenant of good faith and fair dealing when it refused to defend Chemstar.
 
 
 18
 * Liberty argues that Chemstar is not a contracting party nor an insured under the policy and therefore is not entitled to sue under the policy's duty of good faith. This argument has no merit. When Chemstar inherited the benefits under the policy as a purchaser of substantially all of GLC's assets, see Northern Ins. Co. of New York v. Allied Mutual Ins. Co., 955 F.2d 1353, 1358 (9th Cir.), cert. denied, 112 S.Ct. 3033 (1992), one of these benefits was Liberty's duty to deal in good faith.
 
 
 19
 The cases Liberty cites are not to the contrary. None support the proposition that the duty of good faith does not transfer by operation of law to a purchaser of substantially all assets. See Northwestern Mut. Ins. Co. v. Farmers Ins. Group, 143 Cal.Rptr. 415, 422 (Cal.App.1978) (third party beneficiary may enforce implied covenant that was intended to benefit him); Gruenberg v. Aetna Ins. Co., 510 P.2d 1032, 1039 (Cal.1973) (insurer's employees and agents not liable under policy for duty of good faith); Murphy v. Allstate Ins. Co., 553 P.2d 584, 588 (Cal.1976) (injured claimant cannot enforce covenant of good faith not intended to benefit him); Austero v. National Cas. Co., 133 Cal.Rptr. 107, 110 (Cal.App.1976) (wife could not enforce duty of good faith under husband's policy because she was not intended beneficiary of benefits which were denied); Hatchwell v. Blue Shield of Cal., 244 Cal.Rptr. 249, 252-52 (Cal.App.1988) (same).
 
 B
 
 20
 Liberty maintains that since it acted reasonably in deciding that Chemstar was not an insured under the policy and that some of the claims were not covered by the policy, it did not refuse to defend in bad faith.
 
 
 21
 "[B]efore an insured can be found to have acted tortiously, i.e., in bad faith, in refusing to bestow policy benefits, it must have done so 'without proper cause.' " California Shoppers, Inc. v. Royal Globe Ins. Co., 221 Cal.Rptr. 171, 200 (Cal.App.1985); see also Opsal v. United Services Auto. Ass'n, 10 Cal.Rptr.2d 352, 355 (Cal.App.1991). However, "a mistaken withholding of policy benefits ... is consistent with observance of the implied covenant of good faith and fair dealing because mistake supplies the 'proper cause.' " California Shoppers, 221 Cal.Rptr. at 201. "Refusal to defend, without more, does not constitute a breach of the implied covenant." Tibbs v. Great Am. Ins. Co., 755 F.2d 1370, 1375 (9th Cir.1985).
 
 
 22
 Liberty argues that it had proper cause to believe that Chemstar was not an insured. We disagree. There was substantial evidence presented at trial for the jury to determine that Liberty's alleged mistake in considering Chemstar an uninsured was without proper cause.
 
 
 23
 Nor has Liberty shown that it had proper cause to base its refusal on the lack of coverage of the claims filed after December 5, 1986. Evidence was presented to the jury that Liberty was aware that it had a duty to defend and had potential liability for all the claims. S ee id. at 1375 (insurer acted in bad faith by refusing to defend where it was aware that insured was "probably entitled to a defense").
 
 
 24
 Liberty also argues that California law was unsettled on when an occurrence gives rise to coverage. It argues that, like the insurers in Opsal, 10 Cal.Rptr. at 357, and Safeco Insurance Co. of America v. Guyton, 692 F.2d 551, 557 (9th Cir.1982), it based its refusal on a genuine legal issue open to interpretation. We reject this argument because neither case is on point. Both address an insurer's refusal to indemnify, not refusal to defend. Inherent in the concept of the duty to defend is the unresolved issue of coverage. All that is necessary is the potential of coverage. If the insurer could justify its refusal to defend on the argument that coverage was not yet decided, the duty to defend would collapse into the duty to indemnify.
 
 C
 
 25
 Liberty claims that the district court did not allow it to introduce evidence showing that it acted in good faith in refusing to defend. "A trial judge has wide latitude in the admission or exclusion of evidence where the question is one of materiality or relevance, ... and a decision to exclude evidence will not be disturbed unless there has been an abuse of discretion." Lies v. Farrell Lines, Inc., 641 F.2d 765, 773 (9th Cir.1981) (citation omitted). The Ninth Circuit does "not reverse for evidentiary errors unless refusal to do so would be inconsistent with substantial justice." Rogers v. Raymark Ind., Inc., 922 F.2d 1426, 1429 (9th Cir.1991).
 
 
 26
 We conclude that the district court did not err in ruling that evidence on policy limits, retrospective premiums, or excess coverage was not relevant to the duty to defend. Liberty has failed to show that this evidence was relevant or that its exclusion resulted in substantial injustice.
 
 
 27
 Liberty also argues that the district court erred by excluding evidence on Liberty's state of mind and by admitting evidence of Liberty's promises to homeowners. This argument has no merit because a Liberty employee, Frank Overman, was given a chance to testify about Liberty's considerations in deciding not to defend.
 
 V
 
 28
 Liberty argues that the district court erred in formulating five of its jury instructions: by misstating California law on the duty to defend; by failing to give an honest mistake instruction on the issue of bad faith; by misdefining despicable conduct, one of the elements of punitive damages; by failing to state the necessary causal connection between a breach of good faith and the employment of counsel in the issue of Brandt attorneys fees; and by failing to repeat the passion and prejudice instruction when the jury returned for further deliberations on the amount of punitive damages.
 
 
 29
 Jury instructions are considered as a whole to determine if they are misleading or inadequate. Oviatt v. Pearce, 954 F.2d 1470, 1480 (9th Cir.1992). An error in instructing the jury in a civil case does not require reversal if it more probably than not is harmless. Caballero v. Concord, 956 F.2d 204, 206 (9th Cir.1992). Since Liberty failed to object at trial on the first four grounds, we decline to review the instructions. Fed.R.Civ.P. 51; Glover v. BIC Corp., 6 F.3d 1318, 1326 (9th Cir.1993) (quotation omitted).
 
 
 30
 Liberty did object at trial to the district court's failure to give a second passion and prejudice instruction when the jury returned to deliberate on the amount of punitive damages. We conclude that because the district court had given this instruction when the jury began its first deliberations on whether Liberty was liable for punitive damages, there was no error in its omission before the second deliberations. Cooper v. Firestone Tire and Rubber Co., 945 F.2d 1103, 1106 (9th Cir.1991) (district court does not abuse its discretion when it does not give redundant instructions). We reject Liberty's contention that the district court's failure to repeat the instruction violated Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1 (1991). The Supreme Court in that case did not require an instruction on passion and prejudice.
 
 VI
 
 31
 Liberty argues that the award of compensatory damages was improper.
 
 
 32
 * First, Liberty contends that it should not have had to indemnify Chemstar for the amount of the Friedman settlement until the district court determined that the Friedman claim was covered by the policy. We agree.
 
 
 33
 The California Supreme Court concluded in Hogan v. Midland National Insurance Co., 476 P.2d 825, 833 (Cal.1970), that an insurer who failed to defend was responsible only for the insured's fees and costs incurred in defense and the damages for claims covered by the policy. Under Hogan, the district court should have made its finding as to coverage before deciding whether Liberty was responsible for the settlement. However, in our separate opinion disposing of Phase II issues, we conclude that the district court properly found that the Friedman claim was covered by the Liberty policy. Thus, the district court's mistake in awarding the damages too early was harmless since Liberty would have to pay for the settlement and the accumulated interest in any event.
 
 B
 
 34
 Liberty also maintains that the award for attorneys fees Chemstar incurred to obtain policy benefits after Liberty's breach of good faith was improper. In Brandt v. Superior Court, 693 P.2d 796, 798 (Cal.1985), the California Supreme Court held that "[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense." The court was careful to note that its holding did not include fees "attributable to the bringing of the bad faith action itself." Id.
 
 
 35
 First, Liberty contends that since coverage had not been determined in Phase I, Brandt was inapplicable. We disagree. Since Chemstar was entitled to a defense under the policy, regardless of the ultimate coverage determination, Brandt applies to Chemstar's pursuit of this benefit.
 
 
 36
 Liberty further argues that the district court erred in admitting monthly summaries of the attorneys fees instead of requiring that daily records be introduced. We reject this argument. Since Liberty stipulated to admission at trial, it cannot complain now. In any event, Liberty introduced the attorneys' billing statements, which provided the jury with a detailed record of the attorneys' work.
 
 
 37
 Liberty also claims that the district court erred in allowing evidence on fees incurred after April 17, 1991, when Liberty's policy allegedly was exhausted. This admission was not erroneous. Brandt fees are tort damages, not payment on claims covered by an insurance policy. Therefore, even when the insurer has exhausted the policy limits and no longer must pay out under the policy, it must still pay for damages caused by its torts.
 
 
 38
 Finally, Liberty contends that there was insufficient evidence under Brandt for the jury to decide what part of the fees were related to policy benefits and what part to the bad faith claim. We hold that the attorney billing statements submitted by Liberty and the attorneys' testimony on how they allocated fees between work on policy benefits and work on the bad faith claim was substantial evidence supporting the jury verdict.
 
 C
 
 39
 Liberty argues that the award of prejudgment interest was erroneous. California Civil Code Sec. 3287 provides for the award of prejudgment interest for breach of contract damages. The district court awarded the interest on fees incurred defending against the homeowners' suits and on the Friedman settlement, both breach of contract damages. Therefore, we hold that the award was proper.
 
 VII
 
 40
 Liberty argues that the district court abused its discretion in denying Liberty's motion for a new trial based on the punitive damage award.
 
 
 41
 * First, Liberty argues that the district court abused its discretion in not granting Liberty's motion for a new trial. Liberty maintains that its refusal to defend was reasonable and does not support an award of punitive damages.
 
 
 42
 "Under California law, punitive damages are not available for breaches of contract no matter how gross or willful. Punitive damages are recoverable, however, when the defendant breaches the implied covenant of good faith and fair dealing and is guilty of oppression, fraud or malice." Tibbs, 755 F.2d at 1370 (citation omitted) (emphasis in original); see also Neal v. Farmers Ins. Exch., 582 P.2d 980, 986 (Cal.1978) (insurer must have "acted maliciously, with an intent to oppress, and in conscious disregard of the rights of the insured"). "Put another way, punitive damages are recoverable only where the defendant acted with the intent to vex, injure, or annoy." Slottow v. American Cas. Co., 10 F.3d 1355, 1361 (9th Cir.1993) (quotation omitted).
 
 
 43
 The district court did not abuse its discretion in refusing Liberty's motion for a new trial. "[T]he requisite state of mind ... may be proved either expressly ... or by implication (by indirect evidence from which the jury may draw inferences)." Neal, 582 P.2d at 987 (quotation omitted). From evidence presented at trial, the jury could have inferred that Liberty fraudulently misrepresented the facts regarding Chemstar's coverage and consciously disregarded Chemstar's rights under the policy. See Tibbs, 755 F.2d at 1375.
 
 B
 
 44
 Liberty also argues that the district court should have ordered a new trial because the $14 million punitive damage award was excessive. Under California law, an award should be reversed "only when the award as a matter of law appears excessive, or where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice." Neal, 582 P.2d at 990.
 
 
 45
 The district court did not abuse its discretion in deciding that the award was not excessive; it was comparable to other awards upheld under California law. First, the $14 million punitive damage award was five times the $2.8 million compensatory damage award. California courts have upheld much larger ratios. See, e.g., id. (32.7:1 ratio); Moore v. American United Life Ins. Co., 197 Cal.Rptr. 878, 894 (Cal.App.1984) (83:1 ratio); Chodos v. Insurance Co. of N. Am., 178 Cal.Rptr. 831, 841 (Cal.App.1982) (40:1 ratio); Finney v. Lockhart, 217 P.2d 19 (Cal.1950) (2000:1 ratio).
 
 
 46
 Second, the award was about two-thirds of one percent of Liberty's $2.1 billion net worth. California courts have upheld punitive damage awards that were larger percentages of insurers' net worth. See, e.g., Downey Sav. & Loan Ass'n v. Ohio Cas. Ins., 234 Cal.Rptr. 835, 851 (Cal.App.1987) (about 2% of net worth), cert. denied, 486 U.S. 1036 (1988); Moore, 197 Cal.Rptr. at 898 (3.2% of net worth).
 
 
 47
 AFFIRMED.
 
 FERNANDEZ, Circuit Judge, concurring:
 
 48
 I concur in everything in the disposition, with the exception of the determination in Part II that State Farm Mutual Automobile Insurance Co. v. Longden, 242 Cal.Rptr. 726, 731 (Cal.App.1987) is an incorrect statement of California law. In my opinion, that court properly held that the existence of a disputed legal question does not impose a duty to defend upon the insurer. See also McLaughlin v. National Union Fire Ins. Co., 23 Cal.App.4th 1132, 1151-52, 29 Cal.Rptr.2d 559, 570 (1994). Indeed, it is somewhat counter-intuitive to say that an insurer which correctly understood the law of the State of California is nevertheless liable because somebody chose to make a contrary argument. That, of course, is not at all similar to disputes over legal theories set forth in complaints or disputes over factual matters. Having said all of this, I still concur because, as we have demonstrated in our opinion regarding Phase II, Liberty's legal analysis was wrong. In other words, it did breach its duty to defend.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Issues relating to the appeal of Phase II of this case are addressed in a separate opinion and a separate memorandum disposition, both of which are filed concurrently herewith
 
 
 [2]
 Both parties cite Northern Insurance Co. of New York v. Allied Mutual Insurance Co., 955 F.2d 1353 (9th Cir.), cert. denied, 112 S.Ct. 3033 (1992). However, Northern Insurance has recently received sharp criticism from a California district court of appeal. See Quemetco, Inc. v. Pacific Automobile Ins. Co., 29 Cal.Rptr.2d 627 (Cal.App.1994). For this reason, we do not rely on Northern Insurance for our holding
 
 
 [3]
 See accompanying opinion disposing of related issues in Phase II
 
 
 [4]
 In this diversity case, we must determine what the California Supreme Court would rule. Hancock Labs., Inc. v. Admiral Ins. Co., 777 F.2d 520, 525 n. 10 (9th Cir.1985). We are not bound by an intermediate state appellate court ruling. Id